UNITED STATES of America,
Plaintiff-Appellant,

v.

SOUTH PARK INDEPENDENT
SCHOOL DISTRICT et al.,
Defendants-Appellees.

Nos. 76–3669, 77–2872.

United States Court of Appeals,
Fifth Circuit.

Jan. 23, 1978.

Rehearing and Rehearing En Banc
Denied Feb. 23, 1978.

Sherman Johnson, Asst. U. S. Atty., William Turnipseed, Asst. U. S. Atty., Atlanta, Ga., M. Carr Ferguson, Asst. Atty. Gen., Gilbert Andrews, Chief-Appellate Sec., Dept. of Justice, Tax Div., Washington, D. C., for petitioners-appellees.

Kenneth Kilpatrick, Morrow, Ga., for respondents.

Before BROWN, Chief Judge, and THORNBERRY and RONEY, Circuit Judges.

Alexander C. Ross, Thomas M. Keeling, Daniel L. Jennings, U. S. Dept. of Justice, Washington, D. C., John H. Hannah, Jr., U. S. Atty., Tyler, Tex., J. Stanley Pottinger, Brian K. Landsberg, William C. Graves, Mark L. Gross, Attys., Appellate Section, Civil Rights Div., U. S. Dept. of Justice, Washington, D. C., Daniel J. McNulty, Asst. U. S. Atty., Beaumont, Tex., Drew S. Days, III, Asst. Atty. Gen., Frank D. Allen, Jr., Atty., Washington, D. C., for plaintiff-appellant.

John L. Hill, Atty. Gen., Pat Bailey, Asst. Atty. Gen., Austin, Tex., for Texas Educ. Agency et al.

Tanner T. Hunt, Jr., Beaumont, Tex., for South Park Ind. Sch. Dist.

Joe H. Tonahill, Jasper, Tex., for Parents & Students.

R. Leon Pettis, Beaumont, Tex., for defendants-appellees.

Before COLEMAN, TJOFLAT and FAY, Circuit Judges.

FAY, Circuit Judge:

The questions before us today deal with the attempts of the South Park Independent School District (SPISD) to desegregate

their school system. The government contends that a 1970 desegregation plan ordered by the district court and implemented by the SPISD is not having its intended results, and, consequently, further remedial steps should be taken. The district court rejected this argument, and in the process ruled that the SPISD is a "unitary" school system. We reverse the ruling of the district court and remand for further findings of facts.

## I. PROCEDURAL HISTORY

The history of the two cases currently on appeal begins on August 31, 1970, when the United States District Court for the Eastern District of Texas entered an order implementing a school integration plan. The order provided for the desegregation of students under a neighborhood school plan by means of attendance zones encompassing three high schools, four junior high schools, and eleven elementary schools. The order established as the only general exception to the neighborhood school assignment system a majority-to-minority transfer policy wherein a student attending a school in which his race is in the majority may elect to attend another district school in which his race is in the minority.[1] The order also provided for the desegregation of faculty and staff of the district in such a way as to provide a ratio of black teachers and staff to white teachers and staff in each district school that would be substantially the same as the then existing district-wide racial ratio of faculty and staff—allowing a five percent tolerance factor. This order of the district court became final without appeal.

On July 19, 1976, the United States filed a Motion for Supplementary Relief which requested the district court to adopt a new plan of student desegregation. Statistics

reflected that four schools which had been designated for black students under the dual system[2] had been continuously attended solely by black students. In addition, the government statistics showed that seven schools which were all white under the dual system remained virtually all white. In sum, the government statistics pointed out that during the 1975–76 school term 75.1% of all black students in the system attended schools that were 92% or more black and 77.5% of all white students attended schools which were 86% or more white.

On July 29, 1976, the school district filed a reply to the Government's motion urging several reasons for denial of the motion. Their argument was primarily that the school district had remained in full compliance with the 1970 order; that agencies of the United States had consistently approved the school district's implementation of that order since its entry; that desegregative results differing in any way from those anticipated in 1970 were the result of changed residential patterns beyond the control of the school district; and that since 1970 the school district had taken no affirmative action with segregative intent, nor refrained from taking any action within the scope of the court order which, if taken, would have increased desegregative results.

The first appeal before us revolves around the district court's order of September 16, 1976, denying the United States' motion. The court set forth two reasons for its denial. First, the government failed to satisfy the requirements of 20 U.S.C. § 1758 with respect to providing notice to the school district of the details of any violation of equal educational opportunity or of equal protection of law.[3] Therefore,

1. Students electing majority-to-minority transfer were to be given transportation if they desired it (assuming the same is available from district-controlled sources.) Also, such transferees were to be given priority for space in any district school to which they elect to transfer—not merely at the next closest district school at which their race was in the minority.

2. Until the late 1950s, the South Park Independent School System unconstitutionally operat-

ed pursuant to a Texas law a dual school system which required black and white students and faculty assigned to separate schools.

3. 20 U.S.C. § 1758 provides:

Notwithstanding any other law or provision of law, no court or officer of the United States shall enter, as a remedy for a denial of equal educational opportunity or a denial of equal protection of the laws, any order for enforcement of a plan of desegregation or

the defendant had not been given a reasonable opportunity to develop a voluntary remedial integration plan with time for community participation therein. The second reason the court proffered was that independent of § 1758 there still existed no basis for relief since the 1970 plan had desegregated the school district thereby dissolving all vestiges of a dual school system. By so ruling, the district court in effect said that the South Park Independent School District was a "unitary" school system.

The second appeal which we are to review centers around the denial of the government's application of August 8, 1977 for an order to show cause why the defendants should not comply with the August 31, 1970 order. This application alleged that the school board had reassigned its principals for the 1977–78 school year in a racially discriminatory manner in violation of the 1970 order. The government provided statistics showing that in the 1976–77 school year the race of the principals in each of the school district's seventeen schools was in all instances the race of the majority of students. Each of the five black principals in the district was assigned to one of the five schools attended exclusively or predominately by black students. All the rest of the schools had white majorities in student attendance, and each had a white principal.

The school district took the position that the principal assignments of 1977–78 did not alter the desegregation of faculty and staff in any school building; that no district school was identifiable as one intended solely for black students or white students as a result of such principal reassignments; that the principal reassignments were not racial-

modification of a court-approved plan, until such time as the local educational agency to be affected by such order has been provided notice of the details of the violation and given a reasonable opportunity to develop a voluntary remedial plan. Such time shall permit the local educational agency sufficient opportunity for community participation in the development of a remedial plan.

**4.** The Supreme Court also said in *Swann* that:
It does not follow that the communities served by [unitary] systems will remain demographically stable, for in a growing, mobile society, few will do so. Neither school

ly motivated; and that such assignments were not violative of the 1970 order.

On August 16, 1977, the district court entered an order denying the government's application for a show cause order. The court found that the school district had acted in compliance with the 1970 order because the reassignment of principals did not alter the racial composition of the entire staff of any school so as to indicate that a particular school is intended for black students or white students. Further, the district court held that the reassignments does not in any way result in less integration of staff members.

## II. THE STUDENT CASE

The government's first appeal contests the propriety of the district court's denial of its motion for the implementation of a new school desegregation plan. In denying the government's motion, the district court ruled that the government had failed to follow the procedural steps mandated by 20 U.S.C. § 1758, and, in the alternative, that further relief was unnecessary because the South Park Independent School District had become a unitary school system.

Initially, we shall discuss the court's holding that the SPISD is a "unitary" school system. This finding is critical because once it is made a federal court loses its power to remedy the lingering vestiges of past discrimination absent a showing that either the school authorities or the state had deliberately attempted to fix or alter demographic patterns to affect the racial composition of the schools. *Swann v. Board of Education*, 402 U.S. 1, 32, 91 S.Ct. 1267, 1284, 28 L.Ed.2d 554 (1971).[4] Even

authorities nor district courts are constitutionally required to make year-by-year adjustments of the racial composition of student bodies once the affirmative duty to desegregate has been accomplished and racial discrimination through official action is eliminated from the system.
402 U.S. at 31–32, 91 S.Ct. at 1283–84. This point was reemphasized in *Pasadena City Board of Education v. Spangler*, 427 U.S. 424, 96 S.Ct. 2697, 49 L.Ed.2d 599 (June 28, 1976), when the Supreme Court stated:
For having once implemented a racially neutral attendance pattern in order to remedy

though the Supreme Court's decision in *Swann* was rendered subsequent to the 1970 desegregation plan, it nevertheless controls the disposition of this case. To understand fully why this is so, one must keep in mind that under the original 1970 order the district court retained jurisdiction over the South Park school system (this retention of jurisdiction was a normal and necessary procedure taken to insure the implementation of the plan and the achievement of the goal—a "unitary" school system). At no time prior to the 1976 order presently under attack, had a finding been made by the district court as to the attainment of a "unitary" system by the SPISD. Thus, the case remained "active" under the district court's jurisdiction. Given these circumstances, the parties are bound by intervening opinions of the Court of Appeals and the United States Supreme Court, and there have been many such opinions outlining "new guidelines and requirements" in certain situations.

The present posture of this case is that we must review the 1976 order and determine if it is in accord with the mandate of *Swann.* The Supreme Court said in *Swann* that the constitutional command to desegregate schools does not mean that every school in every community must always reflect the racial composition of the school system as a whole. *Id.* at 24, 91 S.Ct. 1280. However, the Court was very careful to point out that situations justifying one-race schools are rare and must be carefully scrutinized.

> [I]t should be clear that the existence of some small number of one-race, or virtually one-race, schools within a district is not in and of itself the mark of a system that still practices segregation by law. The district judge or school authorities should make every effort to achieve the greatest possible degree of actual desegregation and will thus necessarily be concerned with the elimination of one-race schools. No *per se* rule can adequately embrace all the difficulties of reconciling

the competing interests involved; but in a system with a history of segregation the need for remedial criteria of sufficient specificity to assure a school authority's compliance with its constitutional duty warrants a presumption against schools that are substantially disproportionate in their racial composition. Where the school authority's proposed plan for conversion from a dual to a unitary system contemplates the continued existence of some schools that are all or predominantly of one race, they have the burden of showing that such school assignments are genuinely nondiscriminatory. The court should scrutinize such schools, and the burden upon the school authorities will be to satisfy the court that their racial composition is not the result of present or past discriminatory action on their part.

*Id.* at 26, 91 S.Ct. at 1281.

■ In allowing the existence of one-race schools in limited situations, the *Swann* opinion emphasized that findings should be made demonstrating that their existence is not the result of present or past discriminatory action. The district court's holding that the SPISD is a "unitary" school system is not detailed enough to show us whether or not the school system meets this *Swann* requirement. For this reason, it is necessary to remand this case to the district court for supplemental findings of fact in order to determine whether or not the SPISD is in fact a "unitary" school system.

■■ The district court also denied the government's motion for implementation of a new desegregation plan because the government failed to follow the requirements of 20 U.S.C. § 1758. Section 1758 provides that before any court shall enter an order for the enforcement or modification of any court-approved desegregation plan, the local educational agency should be provided with notice of the details of the violation and given a reasonable opportunity to develop a remedial plan. We reject the district court's application of § 1758.

the perceived constitutional violations on the part of the defendants, the District Court had fully performed its function of providing the

appropriate remedy for previous racially discriminatory attendance patterns.
*Id.* at 436–37, 96 S.Ct. at 2705.

The district court had previously assumed and retained jurisdiction over the school system. No judicial ruling had been made concerning the attainment of a "unitary" system. The case had not been closed. Under the facts of this case, the statute is not controlling; but, if it were, reversal would nevertheless be mandated because the government has complied with its basic requirements. In a letter dated April 15, 1976, the Department of Justice wrote to counsel for the school district advising that the Department felt additional steps were necessary to bring the district into compliance with federal law. (R. 103–106). The Department pointed out in this letter that the one-race, or predominately one-race, status of twelve of the district's schools was the primary concern of the government. The letter also explained that the Department of Justice felt that the particular feeder pattern of elementary to junior high to senior high schools used by the school district was the chief cause for these one-race schools. Furthermore, the letter explained that the Department was writing in order to state the reasons it felt the SPISD was not in compliance with federal law and to afford the Board of Education an opportunity to remedy the situation. A motion for supplemental relief was not filed until after the Department of Justice had received a response from the school district explaining that a significantly greater amount of time was needed to develop a new desegregation plan. We are unable to see how the government could have better complied with the notice provisions of the statute, and, therefore, the district court's denial of the government's motion on these grounds was error.

### III. THE PRINCIPAL REASSIGNMENT CASE

In the principal reassignment case, the government has brought forth statistics from which one could infer that the principal assignments were based upon the race of the individuals involved. The school district of course denies this inference. The district court apparently treated either the government's motion or the defendant's response to it as a motion for summary judgment, and, without a hearing, denied the government's motion.

■ We feel compelled to reverse the entry of the summary judgment, but, in so doing, we recognize that the assignment of principals alone is not necessarily the important factor but rather one must look at the racial composition of a school district's entire staff. We are not ready to hold that each particular level of employment in a school system must have a particular racial composition. At the same time, however, we also recognize that in a community individuals might attach a certain degree of importance to the position of principal, and that it would be unconstitutional for a school district to assign principalships based upon the race of the individuals involved. In *Singleton v. Jackson Municipal Separate School Dist.*, 419 F.2d 1211 (5th Cir. 1970), this court explained:

> Staff members who work directly with children, and professional staff who work on the administrative level will be hired, *assigned*, promoted, paid, demoted, dismissed, and otherwise treated without regard to race, color, or national origin.

Id. at 1218 (emphasis added).

■ We are not presently in a position to find that the SPISD is assigning principals in a manner violative of the constitution, but we do feel it is necessary to reverse the entry of the summary judgment. The district court's order lacks the necessary findings of facts justifying what would facially appear to be the unconstitutional assignment of principals based upon race. We remand the case to the district court for specific findings of facts, if such exist, supporting the court's conclusion that the reassignment of principals was done without regard to the race of the individuals involved.

### IV. CONCLUSION

In conclusion, we want to point out that we do not view these cases as a situation where a district court has refused to rule, or as a situation where we need implement our own desegregation plan for the school dis-

trict. We recognize that the issues involved are extremely difficult, and that the ultimate solutions will affect the lives of most individuals living within the communities involved. The district judge is a very learned, able, and conscientious judge, and is fully capable of handling these matters.

Reversed and Remanded.