UNITED STATES of America,
Plaintiff-Appellant,

v.

The BOARD OF EDUCATION OF
VALDOSTA, GEORGIA, et al.,
Defendants-Appellees.

No. 76–3024.

United States Court of Appeals,
Fifth Circuit.

June 19, 1978.

Ronald T. Knight, U. S. Atty., Gregory J. Leonard, Asst. U. S. Atty., Macon, Ga., Kaydell O. Wright, Ed. Section, Jessica D. Silver, Atty., Brian K. Landsberg, U. S. Dept. of Justice, Washington, D. C., for plaintiff-appellant.

Reuben H. Yancey, Valdosta, Ga., for defendants-appellees.

Before AINSWORTH, GODBOLD and HILL, Circuit Judges.

PER CURIAM:

In this case our concern is with the existence of several virtually one-race elementary schools in a system that is otherwise fully desegregated. The district court found that Valdosta's schools had achieved unitary status, and denied the United States' motion for supplemental relief. We vacate and remand for further consideration.

■ A desegregation order for the Valdosta, Georgia school system was issued in 1971. Valdosta has complied with this plan, and has in large part successfully eradicated the dual school system that existed prior to 1971. Nevertheless, implementation of the plan has resulted in the continued existence of several racially identifiable elementary schools. This court has due regard for the success of the Valdosta school board in abolishing the vestiges of the dual system at the junior and senior high school levels. We acknowledge that "the existence of some small number of . . . virtually one-race schools . . . is not in and of itself the mark of a system that still practices segregation by law." *Swann v. Charlotte-Mecklenburg Bd. of Educ.*, 402 U.S. 1, 26, 91 S.Ct. 1267, 1281, 28 L.Ed.2d 554 (1971). Yet we cannot conclude that Valdosta has fully eliminated its dual school system. In evaluating this appeal we look to the law of school desegregation as currently understood in this Circuit. See *Dandridge v. Jefferson Parish School Bd.*, 5 Cir., 456 F.2d 552, 554, *cert. denied,* 409 U.S. 978, 93 S.Ct. 306, 34 L.Ed.2d 240 (1972). The critical issue here is whether a unitary system has been achieved at any time subsequent to the imposition of the desegregation order. Thus, this case is not comparable to the situation in *Pasadena City Bd. of Educ. v. Spangler,* 427 U.S. 424, 96 S.Ct. 2697, 49 L.Ed.2d 599 (1976), where a unitary system already had been achieved, and the racial concentrations were the result of demographic changes rather than the actions of the school board. *See United States v. South Park Independent School Dist.,* 5 Cir., 1978, 566 F.2d 1221, 1224–25.

A number of post-*Swann* cases in this Circuit have evaluated school districts operating in compliance with pre-*Swann* desegregation orders and found that the continued existence of a significant number of virtually one-race schools is constitutionally suspect. *See, e. g., United States v. South Park Independent School Dist., supra.* These decisions have drawn on *Swann's* declaration that

> in a system with a history of segregation the need for remedial criteria of sufficient specificity to assure a school authority's compliance with its constitutional duty warrants a presumption against schools that are substantially disproportionate in their racial composition.

402 U.S. at 26, 91 S.Ct. at 1281.

■ As the following table illustrates, some of Valdosta's elementary schools remain racially identifiable:

School

| | 1970 | | | 1976 | | |
| --- | --- | --- | --- | --- | --- | --- |
| | Black | White | % Black | Black | White | % Black |
| S. L. Mason | 89 | 588 | 13% | 131 | 458 | 22% |
| West Gordon | 576 | 44 | 92% | 509 | 30 | 94% |
| Sallas-Mahone | 48 | 706 | 6% | 59 | 475 | 11% |
| W. G. Nunn | 14 | 609 | 2% | 40 | 438 | 8% |
| Lelia Ellis | 116 | 262 | 30% | 162 | 164 | 50% |
| Southeast | 486 | 0 | 100% | 676 | 1 | 99.8% |
| Lomax | 659 | 3 | 99.5% | 408 | 3 | 99% |

Thus, we can see that several of Valdosta's elementary schools are virtually one race. Fifty-five percent of Valdosta's elementary school population is black, and 80% of those black students attend schools that are over 90% black—West Gordon, Lomax, and Southeast elementary schools. · This high incidence of racially identifiable schools belies the school board's contention that Valdosta has achieved a unitary school system.

This case must, therefore, be remanded to the district court for the development of a plan that is designed to alleviate the incidence of virtually one-race elementary schools. Under the facts of this case, we cannot conclude that this pupil assignment

plan constitutes full performance of the school board's duty to eradicate the dual school system.

█ In remanding this case we emphasize that the remedy should be tailored to achieving a unitary system rather than a systemwide racial balance.[1] *See Dayton Bd. of Educ. v. Brinkman*, 433 U.S. 406, 412–20, 97 S.Ct. 2766, 2775, 53 L.Ed.2d 851 (1977); *Swann v. Charlotte-Mecklenburg Bd. of Educ.*, 402 U.S. 1, 24, 91 S.Ct. 1267, 1280, 28 L.Ed.2d 554 (1971):

> If we were to read the holding of the District Court to require, as a matter of substantive constitutional right, any particular degree of racial balance or mixing, that approach would be disapproved . .. The constitutional command to desegregate schools does not mean that every school in every community must always reflect the racial composition of the school system as a whole.

The district court should give further consideration to the steps necessary to create a unitary school system in Valdosta. We note with approval the declaration of this court in *United States v. State of Mississippi (Laurel)*, 5 Cir., 1978, 567 F.2d 1276, 1277, that a "fresh approach may offer a better solution, but solution must indeed be found . . .."

On remand, this matter should be expedited. The parties and the court are directed to see to the implementation of a desegregation plan at the earliest practicable time.

VACATED AND REMANDED.

---

1. For a discussion of fashioning a desegregation remedy to correspond to the constitutional violation, *see generally* Kanner, *From Denver to Dayton: The Development of a Theory of Equal Protection Remedies*, 72 Nw.L.Rev. 382 (1977).