**UNITED STATES of America,
Plaintiff-Appellant,**

v.

**TEXAS EDUCATION AGENCY (South Park Independent School District) et al., Defendants-Appellees.**

No. 80–1870.

United States Court of Appeals,
Fifth Circuit.
Unit A

May 28, 1981.

Rehearing Denied June 19, 1981.

John H. Hannah, Jr., U. S. Atty., Tyler, Tex., Brian K. Landsberg, Joseph D. Rich, Daniel L. Jennings, Joel L. Selig, Gen. Litigation Sect., Civ. Rts. Div., Dept. of Justice, Washington, D. C., for plaintiff-appellant.

Wells, Peyton, Beard, Greenberg, Hunt and Crawford, Tanner T. Hunt, Jr., Beaumont, Tex., for South Park I.S.D.

Mark White, Atty. Gen., Susan Joyce Dasher, Austin, Tex., Joe H. Tonahill, Jasper, Tex., R. Leon Pettis, Beaumont, Tex., for Texas Ed. Agency and Dr. J. W. Edgar.

Before CHARLES CLARK and RANDALL, Circuit Judges, and SHARP *, District Judge.

SHARP, District Judge.

The South Park Independent School District (SPISP) desegregation case is now en-

* District Judge of the Northern District of Indiana, sitting by designation.

tering its second decade. This litigation has a protracted history and has already resulted in one judgment and opinion of this court found at 566 F.2d 1221. Therefore, only the briefest summary of the facts of the case is necessary here. A fuller description may be found in this court's previous opinion.

The United States has contended since July of 1976 that the 1970 desegregation plan ordered by the district court produced unacceptable levels of integration and that supplemental relief was necessary. The government's position was then, and remains, that the SPISD must adopt and implement a desegregation plan which satisfies the requirements of *Swann v. Charlotte-Mecklenberg Board of Education*, 402 U.S. 1, 91 S.Ct. 1267, 28 L.Ed.2d 554 (1971). On September 9, 1976 the district court held the SPISD was a unitary school system from the moment it entered its original desegregation order August 31, 1970. On appeal this court reversed the district court and remanded the cause for further findings of fact. *United States v. South Park Independent School Dist.*, 566 F.2d 1221 (5th Cir.), *cert. den.*, 439 U.S. 1007, 99 S.Ct. 622, 58 L.Ed.2d 684 (1978). There this court stated:

> In allowing the existence of one race schools in limited situations, the *Swann* opinion emphasized that findings should be made demonstrating that their existence is not the result of present or past discriminatory action. The district court's holding that the SPISD is a "unitary" school system is not detailed enough to show us whether or not the school system meets this *Swann* requirement. For this reason, it is necessary to remand this case to the district court for supplemental findings of fact in order to determine whether or not the SPISD is in fact a "unitary" school system. 566 F.2d at 1225.

On remand, an evidentiary hearing was held on December 3–6, 1979. The testimo-

ny of 49 witnesses was heard; much undisputed statistical evidence was presented. The district court filed its memorandum opinion and order on June 6, 1980 denying the requested relief. The district court again found that its desegregation order of August 31, 1970 created a unitary school system by implementing a racially neutral attendance zone for each school. Therefore, the district court reasoned it was without jurisdiction to consider the request for supplemental relief in the form of additional plans to desegregate. The court explained that this was not a "step at a time" desegregation plan so it was unnecessary to specifically retain jurisdiction in the 1970 order to determine when a unitary system had finally been obtained. Rather, the district court believed it had devised a plan which immediately eliminated all vestiges of the previous dual school system and created a unitary school. The court also found that there was no evidence to support a finding that either the SPISD or the State of Texas had attempted to fix or alter demographic patterns to affect the racial composition of the schools. Thus, having not retained jurisdiction and lacking evidence that would trigger its jurisdiction the district court found itself foreclosed by lack of jurisdiction from considering the motion for supplemental relief.

The district court also found that there was insufficient evidence to support a finding that racial considerations played any part in the reassignment of principals prior to the 1977–1978 school year. It is unnecessary to address this finding herein as it is subordinate to this court's conclusions on the broader issue of unitariness. The district court also held that the United States had failed to meet its burden of pleading and proof pursuant to 20 U.S.C. § 1758. This court stated in its prior opinion that "under the facts of this case, the statute [20 U.S.C. § 1758] is not controlling; but, if it were, reversal would nevertheless be mandated because the government has complied with its basic requirement." *Supra*, 566 F.2d at 1226. The doctrine of the law of

the case in firmly established, its basis being the sound policy that when an issue is once litigated and decided that should be the end of the matter. *Pickens v. Okolona Mun. Separate School Dist.*, 594 F.2d 433 (5th Cir. 1979), citing *United States v. United States Smelting, Refining and Mining Co.*, 339 U.S. 186, 198, 70 S.Ct. 537, 544, 94 L.Ed. 750 (1950); *Morrow v. Dillard*, 580 F.2d 1284, 1290 (5th Cir. 1978). There has been no new life breathed into this issue by the subsequent evidence and the parties' argument here, so it remains as previously decided.

 The scope of review here is controlled by Federal Rule of Civil Procedure 52. It provides that findings of fact "shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." F.R.Civ.Pro. 52(a). Justice Reed wrote in *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 541, 92 L.Ed. 746 (1948) that "a finding is *clearly erroneous* when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Id.*, (emphasis in original). This circuit has long relied on that formulation of the rule. See *Gele v. Wilson*, 616 F.2d 146 (5th Cir. 1980); *Amstar Corp. v. Dommino's Pizza, Inc.*, 615 F.2d 252 (5th Cir.), *cert. den.*, —— U.S. ——, 101 S.Ct. 268, 66 L.Ed.2d 129 (1980); *Western Cotton Oil Co. v. Hodges*, 218 F.2d 158 (5th Cir. 1954). In *Dayton Board of Education v. Brinkman*, 443 U.S. 526, 99 S.Ct. 2971, 61 L.Ed.2d 720 *rehearing den.*, 444 U.S. 887, 100 S.Ct. 186, 62 L.Ed.2d 121 (1979), the Supreme Court addressed the obligation of the Courts of Appeal in school desegregation cases. There the Sixth Circuit Court of Appeals found that the defendants were operating a dual school system and that the finding of the district court to the contrary was clearly erroneous. *Brinkman v. Gilligan*, 583 F.2d 243, 253 (6th Cir. 1978). The Supreme Court stated that

the role and duty of the Courts of Appeals are clear: it must determine whether the trial court's findings are clearly erroneous, sustain them if they are not, but set them aside if they are. *Dayton, supra*, at 534, n. 8, 99 S.Ct. at 2986 n. 8. The most telling evidence introduced in this case is the attendance figures for the district schools. The appellant's burden, "under Fed.R.Civ.P. 52(a), of showing that the trial judge's findings of fact are clearly erroneous is not as heavy ... as it would be if the case had turned on the credibility of witnesses appearing before the trial judge ... However, regardless of the documentary nature of the evidence and the process of drawing inferences from undisputed facts, the reviewing court must apply the clearly erroneous test." *Petition of Geisser*, 554 F.2d 698 (5th Cir. 1977); citing *Sicula Oceanica, S. A. v. Wilmar Marine Eng. & Sales Corp.*, 413 F.2d 1332, 1333–34 (5th Cir. 1969); see also *Jenkins v. Louisiana State Bd. of Educ.*, 506 F.2d 992, 995 (5th Cir. 1975); *Burston v. Caldwell*, 506 F.2d 24, 26–27 (5th Cir.), *cert. den.*, 421 U.S. 990, 95 S.Ct. 1995, 44 L.Ed.2d 480 (1975); *Galena Oaks Corp. v. Scofield*, 218 F.2d 217 (5th Cir. 1954). We should not, however, overturn the decision of the trial court unless we are left with the definite and firm conviction that a mistake has been made. *United States Gypsum Co., supra; Volkswagen of America, Inc. v. Jahre*, 472 F.2d 557, 559 (5th Cir. 1973).

Until the late 1950's the SPISD unconstitutionally operated a school system pursuant to Texas law which required black and white students and faculty assigned to separate schools. The Supreme Court first characterized school systems as "dual" or "unitary" according to their racial status in *Green v. County School Board of New Kent Co., Va.*, 391 U.S. 430, 88 S.Ct. 1689, 20 L.Ed.2d 716 (1968). The court enunciated six criteria: faculty, staff, student bodies, facilities, extra-curricular activities and transportation; and in order to achieve a unitary status the school district must be fully integrated in all six respects. *Id.*, at 435, 88 S.Ct. at 1692. In *Columbus Board*

*of Education v. Penick*, 433 U.S. 449, 99 S.Ct. 2941, 61 L.Ed.2d 666, *reh. den.*, 100 S.Ct. 186, 444 U.S. 887, 62 L.Ed.2d 121 (1979), the Supreme Court stated that since *Brown v. Board of Education (II)*, 349 U.S. 294, 75 S.Ct. 753, 99 L.Ed. 1083 (1955), the Columbus School Board has been under a continuous constitutional obligation to disestablish its dual school system. "*Brown II* was a call for the dismantling of well-entrenched dual systems and school boards operating such systems were clearly charged with the affirmative duty to take whatever steps might be necessary to convert to a unitary system." *Id.*, at 458–459, 99 S.Ct. at 2947–2948; citing *Green, supra*, 391 U.S. at 437–438, 88 S.Ct. at 1693–1694. In *Swann, supra*, the Supreme Court said in regard to student assignments:

> No *per se* rule can adequately embrace all the difficulties of reconciling the competing interests involved; but in a system with a history of segregation the need for remedial criteria of sufficient specificity to assure a school authority's compliance with its constitutional duty warrants a presumption against schools that are substantially disproportionate in their racial composition. Where the school authority's proposed plan for conversion from a dual to a unitary system contemplates the continued existence of some schools that are all or predominantly of one race, they have the burden of showing that such school assignments are genuinely nondiscriminatory. *Supra*, 402 U.S. at 26, 91 S.Ct. at 1281.

The board's continuing affirmative duty to disestablish the dual system is therefore beyond question. *Columbus, supra* at 460, 99 S.Ct. at 2948; *McDaniel v. Barresi*, 402 U.S. 39, 41, 91 S.Ct. 1287, 1288, 28 L.Ed.2d 582 (1971); *United States v. Greenwood Mun. Separate School Dist.*, 406 F.2d 1086, 1093 (5th Cir.); *cert. den.*, 395 U.S. 907, 89 S.Ct. 1749, 23 L.Ed.2d 220 (1969).

This circuit has recognized that a district court walks a narrow line between deciding whether unitary status has or has

not been attained. *Fort Bend Independent School District v. City of Stafford*, 594 F.2d 73, 76 (5th Cir. 1979). The judgment adopting the ultimate plan here was adopted in 1970, 15 years after *Brown II.* The district court subsequently held that the SPISD was converted to a unitary school system by the introduction of this desegregation plan on August 31, 1970. This court has addressed a similar suggestion in *Thompson v. Madison County Board of Education*, 469 F.2d 582 (5th Cir. 1974), stating:

> We are unable to comprehend the suggestion in the district court's opinion and now urged upon this court by the Board that the school system became a unitary system the moment our decree was to become effective ... If the journey from *Brown* to *Swann* and beyond has taught us anything, it is that integration does not occur merely when and because we say it should. The journey has been necessary because we have been concerned with conduct and action, not words. 496 F.2d at 686–687.

This court has made it abundantly clear in the past that a school system is not automatically desegregated when a constitutionally acceptable plan is adopted and implemented. *Henry v. Clarksdale Separate School Dist.*, 579 F.2d 916, 921 (5th Cir. 1978).

Here the simple numeral evidence of student enrollment reflects the effect, or lack thereof, of the desegregation plan.[1] In the school year 1969–1970 there were approximately 13,059 students in the SPISD; of which 8,653 were white and 4,406 were minorities, 4,245 of which were black. Thus, 34% of the students were minorities, 33% being black. In the school year 1979–1980 there were approximately 11,075 students in the SPISD, of which 6,415 were white and 4,660 were minorities, 4,384 of which were black. Thus, 42% of the students were minorities, 40% being black. Prior to the time this plan was implemented in 1970 there were 15 schools out of 20 which were 90% or more one race. See Appendix A 1969–70 column. After this plan had been in effect nine years there were 11 schools out of 18 which were 90% or more one race. See Appendix A 1979–80 column. Ten of these eleven one race schools in 1979–80 were one race schools in 1969–70 and have remained so throughout. Finally, it must be noted that in 1969–70, 9,294 students attended one race schools or 71% of a student population of 13,059; in 1979–80, 8,390 students attended one race schools, or 76% of a student population of 11,075. See Appendix A columns for 1969–70 and 1979–80.

■ Against this background the evidence of record demonstrates convincingly that the defendants have failed to eliminate the continuing system wide effects of the prior discriminatory dual school system. The Supreme Court has stated that "the measure of the post-*Brown* conduct of a school board under an unsatisfied duty to liquidate a dual school system is the effectiveness ... of the actions in decreasing or increasing the segregation caused by the dual system." *Dayton, supra,* at 538, 99 S.Ct. at 2979. Consequently, this court is compelled to hold that the district court's finding that the school system is unitary is clearly erroneous because in fact the school system remains a dual one.

The circuit has addressed the necessity for the district courts to retain jurisdiction over such cases in order to insure the proper implementation of the desegregation plan and the achievement of the ultimate goal—a unitary school system. See *Lee v. Macon County Bd. of Educ.*, 584 F.2d 78 (5th Cir. 1978). In *Youngblood v. Board of Public Instruction of Bay County*, 448 F.2d 770 (5th Cir. 1971), this court outlined the procedure necessary to the conclusion of a school desegregation case. This court there required first that the district court retain

---

1. Appendix A and the figures used here are drawn from student enrollment data found in Government Exhibit # 1, admitted 8–19–76 and Government Exhibits #s 1, 2 and 10, admitted 12–6–79.

jurisdiction over the action for a period of not less than three years. During those three years the school district was required to file semi-annual reports with the district court similar to those in *United States v. Hinds*, 433 F.2d 611, 618–619 (5th Cir. 1970). Second, at the conclusion of those three years the district court should consider whether the cause should be dismissed. Further, the district court could not dismiss the cause without notice to the plaintiffs below and a hearing providing the plaintiffs an opportunity to show cause why the dismissal should be further delayed. Citing *Wright v. Bd. of Public Instruction*, 445 F.2d 1397 (5th Cir. 1971). For cases following *Youngblood* see *Lee, supra;* *United States v. Texas et al (San Felipe Del Rio Consolidated Independent School District)*, 509 F.2d 192 (5th Cir. 1975); *Calhoun v. Cook*, 451 F.2d 583 (5th Cir. 1971).

In denying the requested relief the district court relied on the rationale of the *Swann* opinion which states:

Neither school authorities nor district courts are constitutionally required to make year-by-year adjustments of the racial composition of student bodies once the affirmative duty to desegregate has been accomplished and racial discrimination through official action is eliminated from the system. This does not mean that federal courts are without power to deal with future problems; but in the absence of a showing that either the school authorities or some other agency of the State has deliberately attempted to fix or alter demographic patterns to affect the racial composition of the schools, further intervention by a district court

should not be necessary. 402 U.S. at 32, 91 S.Ct. at 1284

This court's decision in *Youngblood* does not contradict these principles. Rather, "We were establishing [in *Youngblood*] a uniform rule upon which school authorities and district courts might rely for insuring proper local and judicial administration of the school desegregation process. It has never been our purpose to keep these cases interminably in court." *United States v. Texas et al, supra*, at 194. However, the district courts' well intended attempt to create a unitary school system by the entering of an order has proved unsuccessful.

The district court had jurisdiction over this matter when it entered its order of August 31, 1970 and contrary to its idealistic belief it had jurisdiction in 1976 when supplemental relief was sought for the plan was apparently ineffective then. See Appendix A 1976–1977 column. This court had jurisdiction in 1978 and has jurisdiction now. The district court had jurisdiction to carry out the 1978 mandate of this court and has jurisdiction to carry out the mandate entered here and now. Any doubts as to jurisdiction are thus removed. Therefore, in light of the 1970 plan's failure to disestablish the dual school system, this cause is remanded to the district court to develop and implement with the assistance of the parties a new constitutional desegregation plan. This plan shall be in place and operation for the 1981–1982 school year. Nor shall any further extension of time be permitted. Finally, the district court shall comply with the administrative guidelines laid out by this court in *Youngblood* and its progeny. REVERSED AND REMANDED.

## APPENDIX A

### STUDENT ENROLLMENT
### SOUTH PARK INDEPENDENT SCHOOL DISTRICT

| SCHOOL | 1968–1969 | | | 1969–1970 | | | 1971–1972 | | | 1976–1977 | | | 1979–1980 | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Black | White | % Black | Black | White | % Black | Black | White | % Black | Black | White | % Black | Black | White | % Black |
| FOREST PARK HIGH SCHOOL | 54 | 1622 | 3 | 31 | 1720 | 2 | 34 | 1698 | 2 | 36 | 2019 | 2 | 48 | 1878 | 3 |
| HEBERT HIGH SCHOOL | 1159 | 0 | 100 | 1156 | 0 | 100 | 1188 | 1 | 99 | 1209 | 2 | 99 | 1152 | 1 | 99 |
| SOUTH PARK HIGH SCHOOL | 99 | 840 | 11 | 131 | 1102 | 11 | 190 | 913 | 17 | 331 | 502 | 40 | 345 | 373 | 48 |
| MacARTHUR MIDDLE SCHOOL | 134 | 834 | 14 | 96 | 503 | 16 | 176 | 330 | 35 | 274 | 310 | 47 | 210 | 237 | 47 |
| MARSHALL MIDDLE SCHOOL | 3 | 600 | .5 | 0 | 604 | 0 | 11 | 632 | 2 | 6 | 577 | 1 | 10 | 519 | 2 |
| MEMORIAL MIDDLE SCHOOL | 39 | 822 | 5 | 15 | 836 | 2 | 47 | 798 | 6 | Unavailable | | | Unavailable | | |
| VINCENT JR. HIGH | | | | | | | | | | 31 | 696 | 4 | 44 | 682 | 6 |
| ODOM MIDDLE SCHOOL | 850 | 0 | 100 | 868 | 0 | 100 | 734 | 0 | 100 | 814 | 1 | 99 | 758 | 4 | 99 |
| AMELIA ELEMENTARY SCH. | 40 | 1127 | 3 | 11 | 1102 | 1 | 59 | 910 | 6 | 37 | 879 | 4 | 41 | 994 | 4 |
| BINGHAM ELEMENTARY SCH. | 98 | 421 | 19 | 80 | 359 | 18 | 95 | 340 | 22 | 107 | 249 | 30 | 113 | 190 | 37 |
| BLANCHETTE ELEMENTARY | 537 | 0 | 100 | 668 | 17 | 97 | 574 | 0 | 100 | 550 | 0 | 100 | 505 | 2 | 99 |
| CALDWELL ELEMENTARY SCH. | 3 | 334 | .9 | 1 | 326 | .3 | 62 | 402 | 13 | 36 | 352 | 9 | 54 | 291 | 16 |
| CURTIS ELEMENTARY SCH. | 17 | 568 | 3 | 4 | 625 | .6 | 58 | 496 | 11 | 39 | 641 | 6 | 31 | 598 | 5 |
| FEHL ELEMENTARY SCHOOL | 106 | 278 | 28 | 130 | 235 | 36 | 410 | 20 | 95 | 326 | 21 | 94 | 364 | 24 | 94 |
| GILES ELEMENTARY SCHOOL | 207 | 140 | 60 | 212 | 71 | 75 | 147 | 127 | 54 | 20 | 19 | 51 | Closed | | |
| HOLLYWOOD ELEMENTARY | 132 | 0 | 100 | 85 | 0 | 100 | Closed | | | Closed | | | Closed | | |
| PIETZSCH ELEMENTARY | 69 | 576 | 11 | 48 | 592 | 8 | 124 | 352 | 26 | 151 | 324 | 32 | 191 | 222 | 46 |
| REGINA HOWELL ELEMENTARY | 2 | 395 | .5 | 0 | 352 | 0 | 38 | 412 | 8 | 37 | 279 | 12 | 29 | 307 | 9 |
| SOUTHERLAND ELEMENTARY | 166 | 0 | 100 | 191 | 0 | 100 | 131 | 32 | 80 | Unavailable | | | 9 | 4 | 69 |
| TYRELL PARK ELEMENTARY | 26 | 230 | 10 | 17 | 209 | 8 | 34 | 196 | 15 | 61 | 139 | 31 | 82 | 88 | 48 |
| WEST OAKLAND ELEMENTARY | 511 | 0 | 100 | 501 | 0 | 100 | 418 | 0 | 100 | Unavailable | | | Unavailable | | |
| PRICE ELEMENTARY SCHOOL | | | | | | | | | | 382 | 0 | 100 | 398 | 1 | 99 |