UNITED STATES of America,
Plaintiff-Appellee,

v.

TEXAS EDUCATION AGENCY (South Park Independent School District), et al., Defendants-Appellants.

Parents and Students Within South Park Independent School District, et al., (Freedom of Choice), Intervenors-Appellants.

No. 81–2318.

United States Court of Appeals, Fifth Circuit.

March 1, 1983.

R. Leon Pettis, Michael R. McGown, Beaumont, Tex., Lino Graglia, Austin, Tex., for Parents, et al.

Tanner T. Hunt, Jr., Beaumont, Tex., for Texas Educ. Agency, etc., et al.

Walter W. Barnett, Marie E. Klimesz, and Wm. Bradford Reynolds, Gen. Litigation Section, Civil Rights Div., U.S. Dept. of Justice, Washington, D.C., for plaintiff-appellee.

Before GOLDBERG, RUBIN and RANDALL, Circuit Judges.

PER CURIAM.

This is our third, and we hope final, round with this case, which is now in its teens. In 1970, the United States sued the South Park Independent School District (SPISD) to desegregate its racially dual system of student and faculty assignment. The United States District Court for the Eastern District of Texas adopted a school desegregation plan consisting of neighborhood school zones, a majority-to-minority transfer program, and various faculty and staff assignment provisions. No appeal was taken from the original order, but in 1976 the United States filed a motion for supplemental relief, alleging that the desegregation plan ordered in 1970 had failed to dismantle the dual school system in operation in SPISD. The district court denied the motion, stating that it lacked jurisdiction because the 1970 plan had created a unitary school system. This court reversed, *United States v. South Park Independent School District*, 566 F.2d 1221 (5th Cir.), *cert. denied*, 439 U.S. 1007, 99 S.Ct. 622, 58 L.Ed.2d 684 (1978) (South Park I). The appellate court noted that *Swann v. Charlotte-Mecklenburg Board of Education*, 402 U.S. 1, 91 S.Ct. 1267, 28 L.Ed.2d 554 (1971), permits the existence of one-race schools in a school district only if the district shows that the presence of such schools was not the result of past or present discriminatory action. Because the district court's finding

of unitariness was not accompanied by sufficient findings of fact, the appellate court was unable to ascertain whether the school district had met the test of *Swann.* Accordingly, the appellate court remanded the cause for further findings on the issue of unitariness.

In *United States v. South Park Independent School District,* 491 F.Supp. 1177 (E.D. Tex.1980) (*South Park II*), the district court again determined that it was without jurisdiction to consider the government's motion for supplemental relief. The court specifically found that the fact that certain schools were currently attended by students of predominantly one race was not the result of past or present discriminatory action by the school district or the state. *Id.* at 1183. Accordingly, the district court held that the school district was a unitary one.

Again this court reversed, *United States v. Texas Education Agency,* 647 F.2d 504 (5th Cir.1981) (*South Park III*), *cert. denied,* 454 U.S. 1143, 102 S.Ct. 1002, 71 L.Ed.2d 295 (1982), holding that the district court's finding that the school district was unitary was clearly erroneous. *Id.* at 508. The circuit court held that the school system remained a dual one and remanded for development and implementation of a new constitutional desegregation plan. *Id.* at 508–09.

In compliance with the mandate of *South Park III,* the district court held more hearings and developed a desegregation plan incorporating random assignments of household families to one of two feeder patterns composed of the district schools. From this order, the SPISD and Beaumont Freedom of Choice, Inc. (FOC), an intervenor group, now appeal.

While portions of the district judge's opinion read in isolation might indicate that he misinterpreted constitutional requirements, the opinion read as a whole shows that he understood and fairly applied the constitutional precepts applicable to school desgregation cases. The district judge found that the plans offered by the parties would not meet constitutional muster. They would encourage "white flight by creating safe havens in the pairing and clustering configurations. They [would] require an excessive number of school changes for children—one plan would have some students attending seven different schools in seven years—which could be as detrimental to the quality of education in this district, in the Court's opinion, as the phenomenon of white flight." These findings are not challenged as clearly erroneous and, indeed, on the record they could not be. While perfect racial balance is certainly not required, the achievement of such balance is equally certainly not constitutionally prohibited.

Our mandate in *South Park III* was as clear as words can make it: the district court was instructed to dismantle the existing dual school system at once. In its order of 1981, it has attempted to do so in a way that is clearly constitutionally permissible. Accordingly, the district court is in all things

AFFIRMED.