Pete D. ARVIZU, et al., Plaintiffs,

v.

WACO INDEPENDENT SCHOOL DISTRICT, et al., Defendants.

Patricia Ann BAISEY, et al., Plaintiffs,

v.

The BOARD OF TRUSTEES FOR The WACO INDEPENDENT SCHOOL DISTRICT, et al., Defendants.

Civ. Nos. W–71–CA–056, W–71–CA–072.

United States District Court,
W.D. Texas,
Waco Division.

Dec. 4, 1989.

John W. Walker of Walker, Kaplan & Mays, P.A., Little Rock, Ark., Norma V. Cantu, San Antonio, Tex., for plaintiffs.

Phillip E. McCleery, Waco, Tex., Peter Rusek, Waco, Tex., for defendants.

## MEMORANDUM OPINION AND ORDER

WALTER S. SMITH, Jr., District Judge.

Before the Court is the Waco Independent School District's Application for a determination that it has attained unitary status and for a termination of this Court's supervisory jurisdiction.

From August 14–16, 1989, the Court heard evidence and has now reviewed and carefully considered a transcript of that hearing, the exhibits presented, including the Investigative Report of the United States Department of Education, Office of Civil Rights, and the excellent post-hearing briefs supplied by all the parties.

### Background

On July 30, 1973, an order was entered by this Court, finding that discrimination existed in the district, as to both Blacks and Hispanics. At the beginning of the '72–'73 school year the racial composition of the district's 18,505 students was 58.3% Anglo, 28.4% Black and 13.3% Hispanic.

The closing paragraph of Judge Robert's July 30, 1973 order set the tone for the next sixteen years of this litigation:

We have attempted in this Memorandum Opinion and Order to set forth the areas requiring special attention by Defendants in their efforts to formulate a comprehensive program to eliminate all vestiges of the old dual school system. We have, further, set forth the steps necessary to assure the equal protection of the laws to Mexican–American students. This Court recognizes that the conversion of the WISD to a unitary school system will require good faith efforts and certain sacrifices on all sides. This Court directs the attorneys for all parties to begin immediately a series of conferences, to be arranged by counsel for Defendants, at which the parties shall fully explore the possibility of developing a plan agreeable to all. We wish to emphasize our hope and expectation that school officials will utilize their

expertise and familiarity with their own school system to develop a comprehensive plan to implement fully this Memorandum Opinion and Order.

By July 27, 1973, the district had submitted a "Proposed School Plan of the Waco Independent School District." On that date the Court clarified, modified and approved the plan. The Court also retained jurisdiction, required the district to report semiannually and directed that prior to any change in attendance zones or construction of any new school the Plaintiffs be given notice and thirty days to file objections.

Thereafter, the district filed seventeen[1] reports on its continuing efforts toward unitary status, but no problems arose requiring intervention by the Court. The significance of this fact is not lost by the Court.

On May 6, 1982, the Court became involved in the district's plans for consolidation, most notably of three of its four high schools. After an evidentiary hearing and comprehensive briefing and fact-finding, the Court entered its order approving consolidation on November 3, 1983. No other controversy requiring intervention by the Court occurred, and on July 31, 1987, the motion now under consideration was filed.

### The Issues

The Supreme Court has pronounced six areas of inquiry in a determination of whether a school district is "unitary" or "dual".[2] They are: 1) faculty, 2) staff, 3) transportation, 4) extra-curricular activities, 5) facilities, and 6) composition of the student body.

Although the Plaintiffs limit their complaints primarily to the areas of extra-curricular activities, student body composition and composition of the faculty and staff, the Court will discuss each of the six areas.

Transportation

■ There is no real dispute that the district is operating a unitary transportation system. The only complaint Plaintiffs raised in this regard was that the majority to minority transfer program was not adequately made known to the students. Such transfers have been available for fifteen years and there was no evidence that the district attempted to hide such availability from the public.

Facilities

■ Again, the Plaintiffs have no real challenge of the district's position that it has been operating a unitary system as regards its facilities.

Plaintiffs Baisey, et al., seek somewhat to stretch the evidence in this area, when they assert that less than one-seventh of the recent bond issue money was used in "minority sections". The actual testimony elicited by Plaintiffs was that a third of these funds have been spent in those areas. The evidence as a whole clearly established that the facilities of the district were operated in a non-discriminatory manner.

Composition of the Student Body

■ In this area Plaintiffs complain that there is inappropriate "ability grouping" or "tracking" within the district; that the fact that there are fewer minorities in honors and gifted and talented programs evidences vestiges of a dual system; that the achievement gap between Anglos and minorities and the expulsion and drop-out rates for minorities also evidences vestiges of a dual system.

Happily for the Court, the vexatious problem of one-race schools does not exist in the district. The district is in compliance with the Court's previous orders related to student assignments. While the J.H. Hines campus has a student population of 76.25 percent black, it is a magnet school in a predominately black neighborhood. The operation of J.H. Hines in this manner has previously been specifically approved by the Court. A few other schools have a large student population of Hispanics because they offer bi-lingual education.

---

1. Actually the sixteenth report was not filed, but was incorporated in the seventeenth report.

2. *Green v. County School Board of New Kent County, Virginia,* 391 U.S. 430, 88 S.Ct. 1689, 20 L.Ed.2d 716 (1968).

The uncontroverted testimony was that "basic courses" have been eliminated except to the extent required by the Texas Education Agency. "Tracking" or "ability grouping" does not exist in the district. The evil Plaintiffs envision is a system in which lower achievers are forever relegated to less challenging courses of study, and by such process minorities could be denied the right to excel. To the contrary, each student (or parents or guardians) is urged before each registration period *not* to enroll in basic courses. The district is appropriately proud of its stance in this area.

Plaintiffs' position is that the "honors" and "gifted and talented" courses are largely filled by Anglo students. The evidence is that in order to obtain funding for these courses, the district must, and does, comply with the requirements of the Texas Education Agency. The district does this; but the district goes much further. The uncontroverted testimony is that *any* students, whether they meet the criteria or not, are allowed to enroll in an honors course, at least on a probationary basis. Evidence that there are "honors" courses which are all-Anglo but which include only a handful of students convinces the Court that the district offers a wide range of electives, not that a dual system exists.

There is an achievement gap between the district's minorities and Anglos. It is a small gap and has been decreasing each year. The district is intensely interested in and committed to increasing the testing performance of all its students and eliminating any achievement gap. Given a workable solution, the Court is convinced that the district would not only eliminate any statistical anomaly in expulsions and drop-out rates, but would eliminate such educational aberrations entirely. Were the Court to accept the Plaintiffs' position that such small disparity establishes a dual system, it would be the same as charging the school district with the responsibility of solving not only the crime problem but the general lack of moral values our nation and school systems have experienced in recent years. This challenge is not found in our Constitution, and has not so far been leveled at our school districts.[3]

Faculty and Staff

■ As the Plaintiffs assert, the district has not met the goal of increasing minority staff to a level close to that of the student enrollment. The Court has not required quotas. The efforts of the district have been commendable. In the recruitment of minority teachers "[t]he school board need not, of course, lower its employment standard."[4] Such was an important reminder to those truly concerned about the quality of education in 1972 and it is even more important today. Trustees of our school boards must confidently hire the very best qualified teachers, always in a non-discriminatory manner. The Court finds that the district has, to the extent reasonably possible with quality education as its goal, achieved unitary status in the area of faculty and staff.

... a formerly segregated school system need not employ faculty having a racial composition substantially equivalent to that of its student body in order effectively to desegregate its schools and attain unitary status. The District Court erred in imposing such a requirement.... The proper inquiry to be undertaken in an effort to determine whether FBISD is now unitary is two-fold: first, the district's current employment practices must be non-discriminatory and in compliance with constitutional standards; second, the adverse effects of any earlier, unlawful employment practices must have been adequately remedied.[5]

Extracurricular Activities

■ The Plaintiffs focus upon last years' selection of junior varsity cheerleaders at Waco High School. Apparently (the evi-

**3.** *Ross v. Houston Independent School District,* 699 F.2d 218 (5th Cir.1983).

**4.** *United States v. Texas Education Agency,* 647 F.2d 504 (5th Cir.1981).

**5.** *Fort Bend Independent School District v. City of Stafford,* 651 F.2d 1133, 1138 (5th Cir.1981).

dence is not crystal clear), seven Anglos, nine blacks and two Hispanics "tried out" for the cheerleader squad. The year before there had been twelve selected. Last year the total was reduced to eight (or perhaps nine). All seven white applicants were selected and only one (or two) minorities.

The Court patiently heard several hours of evidence concerning this situation. It is a comment on the overall low quality of public education in our country, as compared to our foreign marketplace competitors, that such a petty thing reaches such proportions; not that effective discrimination against minority cheerleader applicants is petty, but that such a frivolous extracurricular activity could attain such importance. Confronted with a serious nationwide educational crisis, one would think such endeavors as cheerleading would have become a thing of the past.

However, the situation exists; it must be non-discriminatory. Plaintiffs assert that requiring cheerleader applicants to agree to pay several hundred dollars to purchase their uniforms and attend summer camp constitutes a "means" test which discriminates against minority students. Plaintiffs are correct; such a practice discriminates. Whether such practice alone is sufficient to prevent a declaration of unitary status is another question.

Unitary Status

■ Having examined each of the *Green* [6] criteria, the Court finds that the Waco Independent School District operates as a unitary system. No school district is perfect; each is unique. Intensive efforts have been made by the trustees of the district to eliminate the effects of past discrimination; not just recently, but since the Court's orders of the early 1970's. The question remaining is when unitary status was achieved and whether the Court's jurisdiction should continue.

This Court's order of October 12, 1983 provided the blue print for consolidation of the district. In that order the district is referred to as "a desegregated school district which is attempting to achieve unitary status." The district was directed to file reports concerning its kindergarten program until it achieved unitary status. The 1983 order stated that the Court would retain jurisdiction during the period encompassed by that order. The latest date referred to in that plan was the date the district had to determine whether University High School would remain independent or be consolidated—March 1, 1986.

It is clear that after attaining unitary status, a district must file regular reports and be subject to the Court's jurisdiction for at least three years.[7]

It is the finding of the Court that unitary status in Waco Independent School District has existed at least since March 1, 1986— more than three years ago. Semiannual reports have been filed since 1973. The teaching of *San Felipe Del Rio* [8] is that dismissal is now in order.

The only lingering doubt concerns the cheerleader selection process referred to. The insensitivity of one administrator, whomever that may have been, should not be grounds for an entire school district's monitoring by a federal court. Should the district continue its "means test" requirement for any extracurricular activity, minority parents will certainly be able to seek relief in this Court, and in light of this opinion, should be able to establish any necessary intent on the part of a recalcitrant school board.

On April 27, 1973, this Court, speaking through Judge Roberts stated, "This Court has no desire to become a 'super school board,' and we feel confident that the responsible officials of the WISD will fulfill their legal obligations to the complete satisfaction of this Court." Those past and present responsible officials have done so.

6. *Green v. County School Board of New Kent County*, supra.

7. *United States v. State of Texas, et al. (San Felipe Del Rio Consolidated Independent School District)*, 509 F.2d 192 (5th Cir.1975).

8. *Id.*

The trustees, administrators, teachers, employees, students and taxpayers of the Waco Independent School District should be proud of their accomplishments. This district has for at least three years been a unitary district; it has followed all the orders of this Court; and it no longer requires the continued monitoring or jurisdiction of this Court. Accordingly, it is

ORDERED that this case is DISMISSED. Costs of this motion are adjudged against the parties incurring same.