Clifford Eugene DAVIS, Jr., et al.

v.

EAST BATON ROUGE PARISH
SCHOOL BOARD.

Civ. A. No. 1662A.

United States District Court,
M. D. Louisiana.

April 30, 1982.

Supplemental and Amending Order
May 7, 1982.

Robert C. Williams, Baton Rouge, La., for plaintiffs-intervenors Bryant, Potter and NAACP.

Franz R. Marshall, U. S. Dept. of Justice, Washington, D. C., Stanford O. Bardwell, U. S. Atty., Baton Rouge, La., for plaintiff-intervenor United States.

John F. Ward, Jr., Baton Rouge, La., for defendants.

JOHN V. PARKER, Chief Judge.

The court now has before it several matters relating to further desegregation of the East Baton Rouge Parish school system.

## A. The Middle Schools

On May 1, 1981, the court, 514 F.Supp. 869, entered an order which contained a plan for desegregation of the East Baton Rouge Parish school system. The order called for single and double grade centers at the middle school level (sixth, seventh and eighth grades). Implementation of the order as to the secondary schools was delayed for a period of one year and, upon the request of the School Board, the court authorized it to propose an alternative middle school plan, provided it was filed by September 30, 1981. Upon request of the Board, this time limit was extended to October 30, 1981; however the Board failed to agree upon any alternate plan and the court directed that the Board begin implementation of the May 1, 1981 order as to the middle schools.

Although the Board could not agree upon any alternate plan, it did submit, on October 30, 1981, a plan developed by the Superintendent of Schools, together with a number of other proposals which had been submitted to it by groups of citizens. These were presented to the court for its "consideration." Subsequently, the United States Attorney and the Department of Justice entered discussions regarding possible resolution of the middle school desegregation plan with the Superintendent of Schools and the attorney for plaintiffs-intervenors. The basis for discussion was the Superintendent's proposal. These discussions collapsed on March 2, 1982 and the court rejected all alternative proposals on March 8, 1982.

After its repeated failures, the School Board has now, at this late date, adopted, and on March 30, 1982, submitted to the court, an alternative plan for desegregation of the middle schools. The court conducted a hearing on the Board's proposal on April 22, 1982 and took the matter under submission.

At the hearing on April 22, 1982, the testimony centered around one school, Scotlandville Middle School, an all black institution constructed by the School Board as such and, until now, continuously operated as such. The United States, in its response to the School Board's alternate plan, suggests that the plan developed by the Superintendent, "may hold greater prospect of successfully desegregating the middle schools." The Superintendent's plan called for establishing a magnet program at Scotlandville Middle which is the major difference between the two plans.

The United States:

"... does not affirmatively support the School Board's Alternative Secondary Desegregation Plan filed with the court on March 30, 1982.

However, the plan, if it works as projected, would achieve a satisfactory level of desegregation, and consequently, the United States does not oppose the court's approval of the plan."

At the hearing, both plaintiffs-intervenors and the United States, took the position that the Board's alternative plan will not work, because it will not successfully desegregate Scotlandville Middle School.

In addition, plaintiffs-intervenors attack the proposed plan on several other grounds, including timeliness. They correctly point out that the court has already devised a plan which will fully desegregate the mid-

dle schools and that nothing short of that standard is constitutionally acceptable. *Swann v. Charlotte-Mecklenburg Board of Education*, 402 U.S. 1, 91 S.Ct. 1267, 28 L.Ed.2d 554 (1971); *Dayton Board of Education v. Brinkman*, 443 U.S. 526, 99 S.Ct. 2971, 61 L.Ed.2d 720 (1979); *Wright v. Council of City of Emporia*, 407 U.S. 451, 92 S.Ct. 2196, 33 L.Ed.2d 51 (1972).

On paper, the alternative plan adopted by the School Board desegregates every middle school. It proposes to desegregate Scotlandville Middle by collecting some 150 oriental students (mostly Vietnamese) from throughout the parish and transporting them there, by transferring black students from Scotlandville Middle to Baker Middle and by assigning white students from the Greenbrier attendance district to Scotlandville Middle. The School Board suggests that the oriental students be counted as "white" in order to attain a proposed racial composition of 51% black and 49% "non-black."

The United States and plaintiffs-intervenors point out that racial minorities, such as these oriental students, may not be utilized for such purposes. *Hernandez v. State of Texas*, 347 U.S. 475, 74 S.Ct. 667, 98 L.Ed. 866 (1954); *Keyes v. School District No. 1, Denver Colorado*, 413 U.S. 189, 93 S.Ct. 2686, 37 L.Ed.2d 548 (1973); *Alvarado v. El Paso Independent School District*, 445 F.2d 1011 (5th Cir. 1971); *Cisneros v. Corpus Christi Independent School District*, 467 F.2d 142 (5th Cir. 1972). See also *Guey Heung Lee v. Johnson*, 404 U.S. 1215, 92 S.Ct. 14, 30 L.Ed.2d 19 (1971), Justice Douglas, writing as Circuit Justice. These parties suggest that the 150 white students from Greenbrier who are assigned to Scotlandville Middle along with 500 black and oriental students will simply not attend, leaving the school segregated.

The Superintendent's testimony that some of the white students might want to attend Scotlandville Middle in order to participate in the language program designed for non-English speaking students is unconvincing.

In the order of September 4, 1981 authorizing the Board to submit an alternative plan, the following caveat was included:

"Any parties submitting suggested revisions will have the burden of proving that the revisions submitted will more effectively desegregate the Secondary School System than the Court's order of May 1, 1981."

The School Board has not met that burden of proof.

The evidence offered at the hearing consisted of the testimony of the Superintendent of Schools that, in his opinion, the single and double grade centers called for by the court's order are "educationally unsound" and for that reason many students, particularly white students, will leave the public school system if the court's order is implemented. The Superintendent then concluded that the proposed alternative plan would more effectively desegregate the middle schools because more students would remain in the system.

The opinion of the Superintendent regarding educational unsoundness of the court's order has been frequently and publicly voiced. Once again, that opinion is not supported by any facts. The Superintendent did refer to a single grade center in an unidentified school district at which "discipline problems" developed. Whether these problems were caused by the single grade center, or by other factors, such as desegregation, was not explained. In this connection, the court observes that a competent staff and faculty should be able to maintain discipline at all grade levels. Moreover, if sixth graders are physically separated from eighth graders in single grade centers, it follows that the eighth graders will find it more difficult to introduce the younger students to drugs and alcohol. To that extent, implementation of the court's order for single grade centers might incidentally assist the school system in coping with what has become a serious problem at the very grade levels which are under discussion.

The Superintendent was also of the opinion that the middle school years are "critical" to the educational process and that

students of that age need a three year program to properly complete the transition from elementary to high school. Here also the Superintendent offered nothing except his unsupported opinion. There are no facts in this record upon which such a conclusion can be predicated and the court refuses to accept the notion that single grade centers would stunt the transition process of the students enrolled in them.

The Board has not established that single grade centers are educationally unsound.[1]

The School Board also claims that implementation of the court's order will substantially increase transportation requirements at the middle school level over and beyond that contemplated by the proposed alternative. No time and distance studies were offered, either of transportation requirements under the court's plan or those under the alternative plan. Consequently, no meaningful comparison of transportation requirements may be made.

Nevertheless, the testimony of Mr. McHugh, the Director of Transportation, to the effect that single grade centers will reduce the number of students who can walk to school, seems reasonable to the court. We therefore conclude that the court's plan will probably require transportation of more students than the School Board's alternative plan. The court does not accept Mr. McHugh's offhand estimate of a 60% increase in transportation, since there is no factual basis for that conclusion, but the court does conclude that *some* additional transportation will result under the court's order.

■ We hasten to point out that neither additional transportation nor "white flight" are acceptable reasons for declining to effectively desegregate the school system. *Swann v. Charlotte-Mecklenburg Board of Education,* supra.

■ Although the court cannot accept the alternative plan as proposed by the School Board, that plan, with minor modifications, can, as the United States asserted, "achieve a satisfactory level of desegregation." As this court has previously observed, there is nothing magic about a particular desegregation plan. It is simply a tool by which all vestiges of state imposed racial segregation are eradicated.

The adoption of this plan by the East Baton Rouge Parish School Board represents an "historic" breakthrough in this litigation, because, for the first time the Board has adopted a proposal which comes near to actually desegregating a substantial portion of the school system. All prior proposals adopted by the Board have fallen significantly short of meeting constitutional requirements.

This court's only objective is to see to it that the East Baton Rouge Parish school system is desegregated and, while the Court must maintain jurisdiction until the local authorities eliminate the former dual system, *United States v. Texas Education Agency,* 647 F.2d 505 (5th Cir. 1981); *Lee v. Macon County Board of Education,* 616 F.2d 805 (5th Cir. 1980), the court desires to hasten that process to its final conclusion whenever possible.

The court recognizes that although there is no actual evidence of educational unsoundness of the single grade centers called for by the court's order, the Superintendent of Schools is convinced that single grade centers are educationally unsound. That firmly held perception, whether accurate or not, will likely permeate the entire school system and could make implementation of the court's order more difficult.

The court also takes it as a positive sign that the School Board, although by a slim one vote margin, has adopted a plan which seriously proposes to desegregate the middle schools. Perhaps this represents, at

---

1. The fact that the court has discussed the Superintendent's contention as to the educational soundness of single grade centers should not be construed as an indication that the court's clear duty to see to it that the Board dismantles the dual school system has been obscured. *Swann v. Charlotte-Mecklenburg Board of Education,* 402 U.S. 1, 91 S.Ct. 1267, 28 L.Ed.2d 554 (1971).

last, a recognition by the Board of the continuing duty which falls upon local officials to eliminate all vestiges of state imposed segregation. *Swann v. Charlotte-Mecklenburg,* supra; *Tasby v. Estes,* 572 F.2d 1010 (5th Cir. 1978), *cert. granted* and *dismissed, Estes v. Metropolitan Branch of Dallas, NAACP,* 444 U.S. 437, 100 S.Ct. 716, 62 L.Ed.2d 626 (1980).

Since the duty devolves upon the local officials, it is appropriate that the court accord their plan due consideration. Recognizing that neither difficulty, nor expense, nor even educational objections, are excuses for failing to implement a court's desegregation order, and also recognizing that the alternative plan is untimely, the court is nevertheless persuaded to accept it, with minor modifications. The plan, with modifications, promises to achieve a satisfactory level of desegregation.

The sole reason for acceptance is that the court believes that people who implement a desegregation plan are more likely to look for ways to make it *work*, instead of for ways to make it *not work* if they implement their own plan.

Modifications are necessary to insure desegregation of all the middle schools, including Scotlandville Middle and to prevent the Board from using the oriental students as a desegregation factor.

The oriental students will not attend Scotlandville Middle, they shall remain in the schools they presently attend. The Board's plan indicates that assignments to Baker Middle School exceed capacity. Accordingly, students in the Parkridge attendance district will be reassigned from Baker Middle to Scotlandville Middle and students in the Harding attendance district will be reassigned from Scotlandville Middle to Northwestern Middle.

With these minor modifications, the School Board's alternative plan promises to achieve desegregation at the middle school level.

The modifications are:

| BAKER MIDDLE SCHOOL / 864 | B | W | Total | |
|---|---|---|---|---|
| Baker Heights | 46 | 169 | 215 | |
| Beechwood | 127 | 2 | 129 | |
| White Hills | 14 | 143 | 157 | |
| Bakerfield – only area known as Leland College | 71 | 0 | 71 | |
| Progress – area east of Kansas City Southern Railroad | 100 | 0 | 100 | |
| TOTAL | 358 | 314 | 672 | 53% (B) |

192 Students Under Capacity

| NORTHWESTERN MIDDLE SCHOOL / 891 | B | W | Total | |
|---|---|---|---|---|
| Northwestern | 104 | 160 | 264 | |
| Zachary | 106 | 140 | 246 | |
| Harding | 132 | 1 | 133 | |
| Bakerfield – only area north of Irene Road | 0 | 15 | 15 | |
| TOTAL | 342 | 316 | 658 | 52% (B) |

233 Students Under Capacity

| SCOTLANDVILLE MIDDLE SCHOOL / 864 | B | W | Total | |
|---|---|---|---|---|
| Ryan | 196 | 6 | 202 | |
| Greenbrier | 6 | 164 | 170 | |
| Parkridge | 20 | 200 | 220 | |
| TOTAL | 222 | 370 | 592 | 38% (B) |

272 Students Under Capacity

For the foregoing reasons, the alternative plan for desegregation of the middle schools, adopted by the East Baton Rouge Parish School Board and filed in this record on March 30, 1982, with the modifications noted, is hereby ADOPTED and ORDERED implemented in the 1982–83 school year.

The School Board is further ORDERED to maintain the actual enrollment at Scotlandville Middle School at least 60% white; conversely, this means that the actual black enrollment shall not exceed 40%.

In addition to the requirements of *Singleton v. Jackson Mun. Sep. School District,* 419 F.2d 1211 (5th Cir. 1970) the School Board shall maintain the proportion of black regular classroom teachers at Scotlandville Middle School at not more than 40%.

All students who attend Scotlandville Middle School for at least two years shall have preference over all other students in the East Baton Rouge Parish school system to attend Baton Rouge High Magnet School or (if established by the Board) Scotlandville High Magnet School. This preference shall permit any such student to attend

either Baton Rouge High Magnet School or Scotlandville High Magnet School, at his option, provided, of course, that each student must meet the established admission requirements for magnet schools. This preference shall be accorded any student who attends the eighth grade at Scotlandville Magnet School for the 1982–83 school year.

Students who are assigned to attend Scotlandville Middle School but decline to do so shall not thereafter be accepted into the East Baton Rouge Parish school system at any grade level except upon specific authorization by the court after demonstrating to the court that the reason for not attending was unrelated to desegregation.

The School Board shall undertake all other actions necessary to eliminate all racially identifiable middle schools.

Although the court has accepted, with minor modifications, the alternative plan adopted by the School Board, let there be no misunderstanding.

The court does not adopt the Board's proposal because it is "better" than the court's order. No defect in the court's plan has been proved; the only reason for adopting the School Board's plan is the hope that, because the Board will be implementing its own plan, it will do so with more enthusiasm and in the process will look for ways to make desegregation work, rather than for ways to make it not work.

The court is mandated to retain jurisdiction over this school system until the Board successfully desegregates the entire system and, if the Board's alternative plan for desegregation of the secondary schools is not successful, the court's plan will be implemented.

### B. Use of Closed Schools

■ The School Board has requested the court to authorize the use of certain schools which were ordered closed by the court's order of May 1, 1981, and has further suggested that it be relieved of the burden of requesting advance approval of the court for utilization of closed facilities.

Plaintiffs-intervenors oppose the use of some of the schools and also oppose any change in the procedure by which closed schools are to be utilized. The United States has no opposition to the specific uses proposed and concurs that a change in procedure would be appropriate.

The Board proposes the following uses:

| SCHOOL | AGENCY | USE |
| --- | --- | --- |
| Wyandotte Elementary | State Department of Education | Depository for hearing impaired |
| Zion City Elementary | School Board | Special Education Center |
| Hollywood Elementary | City Parish Government | Police Training Academy |
| Southdowns Elementary | School Board | Non-categorial Preschool Special Education Center and Special Education Administrative Staff |
| Sherwood Forest Elementary | School Board | Teach In-Service Training Center, Media Center, Instructional Television Dept., and Library Services Dept. |
| Reddy Elementary | School Board | Pupil Services Division |

Plaintiffs-intervenors specifically object to the proposed uses of Zion City Elementary, Hollywood Elementary, Sherwood Elementary and Reddy Elementary.

At the hearing on April 22, 1982, plaintiffs-intervenors declined to offer any evidence in support of their objection, preferring to rely upon their written opposition and the School Board relied upon its written submission.

The court has carefully examined the reasons submitted by the Board in support of its requests for these uses and can find no objection thereto. The uses proposed will not in any way interfere with the desegregation of the East Baton Rouge Parish school system and consequently there is no reason why the court should interfere with these uses.

Moreover, the court will adopt the procedure suggested by the government regarding future proposals for use of closed facilities.

### C. Reduction of Students at Woodlawn High School

There being no opposition to the School Board's proposal submitted March 19, 1982,

regarding reduction of students at Wood-lawn High, it is hereby APPROVED.

### D. Reports of the Special Master

On February 8, 1982, the Special Master filed two reports, one titled "Faculty Assignment" and one titled "Teacher Assignment." The School Board, while conceding the accuracy of the Special Master's factual findings and his interpretation of the data submitted by the School Board, objects to the Special Master's recommendations. The United States has made no comment and plaintiffs-intervenors urge adoption of all recommendations made by the Special Master in these reports.

The court has carefully considered these reports and, although they contain thoughtful recommendations which appear to be viable and effective, the court will not approve them at this time. Should the School Board fail to take remedial action of its own to deal with the problems discussed by the Special Master, the court will return to these reports.

The court does, however, approve the recommendation of the Special Master regarding school libraries and the School Board is hereby ORDERED to file a report dealing with libraries by May 21, 1982, in the form recommended by the Special Master.

The court reiterates its previous finding that there is no factual basis in this record for concluding that the experience or lack of experience of teachers is a factor directly bearing upon desegregation of the school system or directly related to the competency and efficiency of teachers, per se.

The court hereby APPROVES the faculty assignment plan maintained by the School Board and concludes that it is in accordance with the *Singleton* requirements.

### E. The Elementary Schools

On March 8, 1982, the court, 533 F.Supp. 1161, pointed out that in some elementary school clusters black schools have continued and the court invited the Superintendent and his staff to suggest remedial actions. Despite the well established law that a local school district bears the continuing responsibility to eliminate the system of dual education at all grade levels, *Lee v. Macon County Board of Education*, 616 F.2d 805 (5th Cir. 1980), the Superintendent declined to offer any suggestions. His response is to do nothing because of fear of "white flight." The court must retain jurisdiction until the School Board establishes a unitary system. *United States v. Texas Education Agency*, 647 F.2d 504 (5th Cir. 1981); *Lee v. Macon County*, supra, and additional changes in student assignments must be made, if necessary to achieve elimination of the dual system. *Tasby v. Estes*, 572 F.2d 1010 (5th Cir. 1978), *cert. granted* and *dismissed, Estes v. Metropolitan Branch of Dallas NAACP*, 444 U.S. 437, 100 S.Ct. 716, 62 L.Ed.2d 626 (1980).

The court is particularly concerned about student enrollment at Ryan, Harding, Progress, Belfair, Delmont, Eden Park, Dufrocq and Buchanan elementary schools. These former all black schools continue to have black enrollments far out of proportion to the ratio of the system as a whole; they are, therefore, still perceived as black schools.

If the School Board, Superintendent and staff fail to suggest remedial measures, the responsibility will then fall upon the court by default. Accordingly, the Superintendent of Schools is hereby ORDERED to submit by May 21, 1982, a proposal for reducing the percentage of black enrollment at the above named schools.

The proposals submitted by the Superintendent may include a system of inducements for attending a particular school, such as that ordered by the court in connection with Scotlandville Middle School, redistricting of attendance zones, reassignment of students from one school in a cluster to another school in that cluster, assignment of first grade students to particular schools in a cluster by race, assignment of entering or re-entering students to particular schools in a cluster by race, faculty reassignment as recommended by the Special Master, or any other action which the imagination suggests and which promises to be equitable and effective.

The court hopes that the Superintendent will search for ways to make desegregation work, rather than for ways to make it not work.

### SUPPLEMENTAL AND AMENDING ORDER

The court has before it the "request of defendant, East Baton Rouge Parish School Board, for supplemental order clarifying the status of the location of the middle school gifted and talented program" filed herein on May 4, 1982.

The School Board points out that the court's order of April 30, 1982, relating to the desegregation of the middle schools, did not address the unresolved pending matter of the location of the gifted and talented program for that level. The court's order of March 8, 1982, had placed that program at Capital Middle School and the Board has pointed out that Capital Middle lacks sufficient capacity to accommodate the students involved in that program.

The Board now requests that the middle school gifted and talented program be divided between Istrouma Middle Magnet and McKinley Middle Magnet Schools. Opposing parties have raised no objection and the Board's request is hereby APPROVED.

On its own motion, the court reconsiders that portion of the order dated April 30, 1982, relating to students who are assigned to Scotlandville Middle School but who decline to attend. Upon reflection, the court is concerned that the restriction upon readmission of those students to the public schools, which is contained in that order, may not only be out of keeping with the teaching of *Valley v. Rapides Parish School Board*, 646 F.2d 925, 944 (5th Cir. 1981), see also *Pierce v. Society of Sisters*, 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070 (1925), but that such a restriction would probably also be ineffective and counter-productive, as a practical matter. Accordingly, the order of April 30, 1982, is hereby AMENDED so as to delete the first paragraph on page 10 thereof.

The order of April 30, 1982 is further AMENDED as follows:

The School Board is hereby ORDERED to compile and file with the court on or before the end of the current school term, a complete listing, by name, of all students assigned for 1982–83 to Scotlandville Middle School. Within ten days after the opening of school for the fall 1982 term, the School Board shall report to the court the names of all of those assigned students who do not attend Scotlandville Middle School and shall further certify, under oath, that none of the assigned students are attending any other middle school in East Baton Rouge Parish. That certificate shall be resubmitted to the court in similar form every six weeks thereafter, during the school term.

IT IS FURTHER ORDERED that during the period of the summer recess, the School Board shall conduct a program of community involvement, which may include school open houses, parental meetings, staff and teacher training and orientation programs and other measures supportive of the desegregation of the public schools. The School Board shall file, by May 21, 1982, a complete and detailed proposal for these activities, which may include enhancement of programs at appropriate schools, including Scotlandville Middle School. The School Board is reminded Scotlandville Middle School is projected at some 270 students under capacity and, the Board is authorized to install a "magnet add-on" component or to install a gifted and talented program at that facility, if it desires. In any event, the Board is specifically ordered to devise and place into operation a curriculum enhancement program at Scotlandville Middle School for the 1982–83 school term. Details of that opposed program shall be filed with the court not later than June 15, 1982.

The court, upon its own motion, also clarifies the April 30, 1982 order insofar as it relates to student assignments at Scotlandville Middle School. The second complete paragraph on page 9 of the order dated April 30, 1982, is hereby AMENDED so as to read as follows:

For the 1982–83 school term, the School Board is further ORDERED to maintain

the actual enrollment at Scotlandville Middle School at least 60% white, conversely, this means that the actual black enrollment shall not exceed 40%. During the ensuing three year period, the School Board shall, within ten days of the beginning of each school term, report to the court the enrollment, by race, of Scotlandville Middle School and, should the enrollment figures indicate the possibility that the school is or is about to become, racially identifiable, the School Board shall propose corrective measures in that report. The court may require follow-up reports at ten day intervals to insure that the corrective measures are being effectively carried out.