SOUTH PARK INDEPENDENT SCHOOL DISTRICT *v.*
UNITED STATES

No. A–5.   Decided July 21, 1981*

JUSTICE POWELL, Circuit Justice.

A school district in Beaumont, Tex., and a group of intervenor parents, children, and citizens have requested me as Circuit Justice to stay the mandate of the Court of Appeals for the Fifth Circuit pending disposition of their petition for a writ of certiorari. The Court of Appeals ordered the District Court to prepare and implement a desegregation plan to operate during the 1981–1982 school year. For the reasons stated below, I must deny the applications.

Much of the history of this lawsuit is set out in *Huch* v. *United States* and *South Park Independent School District* v. *United States,* 439 U. S. 1007, 1008 (1978) (REHNQUIST, J., dissenting from denial of certiorari). In brief, prior to 1970, the applicant school district maintained a dual school system based on *de jure* racial segregation. In that year the District Court entered a school integration plan that was ac-

---

*Together with No. A–33, *Huch et al.* v. *United States,* also on application for stay of the same mandate.

cepted by all parties. The plan established racially neutral attendance zones for each school and included a provision allowing any student to transfer from a school where his race was in the majority to one where it was in the minority.

In 1976, the United States filed a motion for supplemental relief, alleging that a dual system still existed in fact. The District Court denied relief, holding that its 1970 order had created a unitary school system and finding that the present racial concentrations in the school district were the result of shifting residential patterns, the transfer of some pupils to private schools, and other factors beyond the control of the school district. It held that it no longer retained jurisdiction over the case and that the United States must file a new complaint if it seeks further relief.

The Court of Appeals reversed. 566 F. 2d 1221 (1978). Relying on *Swann* v. *Charlotte-Mecklenburg Board of Education,* 402 U. S. 1, 26 (1971), it held that the District Court's findings were insufficient to show that the predominance of substantially one-race schools was not the result of past or present acts of intentional discrimination. The court remanded to the District Court to hold further hearings on the question whether the school district is now a unitary system. This Court denied certiorari. 439 U. S. 1007. Two Justices dissented, suggesting that the case presented an important issue whether *Pasadena City Board of Education* v. *Spangler,* 427 U. S. 424 (1976), precluded continuing jurisdiction by the District Court where all parties had acquiesced in a desegregation plan six years previously.

On remand the District Court held an evidentiary hearing and made findings of fact. It found that the 1970 order created a unitary school system by implementing a racially neutral attendance zone for each school and that the court was now without jurisdiction to entertain a motion for supplemental relief. The court recounted at length evidence tending to show that the "lesser percentage of desegregation

that had been anticipated" was caused by demographic changes and parental resistance. The court found no evidence that the school district had committed any act of intentional discrimination, but rather that the authorities had implemented the 1970 plan in good faith.

The Court of Appeals again reversed. *United States* v. *Texas Education Agency*, 647 F. 2d 504 (1981). It held that the District Court's finding that the implementation of the 1970 order had created a unitary school system was clearly erroneous. In reaching this decision, the court compared statistics concerning the racial composition of schools in the district in the 1969 and 1979 school years. These statistics indicate that there has been little lasting progress in achieving schools with balanced pupil populations. In 1969, 15 of 20 schools in the district had student populations 90% or more of one race; in 1979, 11 of 18 still were 90% or more of one race. The percentage of blacks in the system rose from 33% in 1969 to 40% in 1979. The court held that the District Court retained jurisdiction because these figures proved that the school authorities "had failed to eliminate the continuing system wide effects of the prior discriminatory dual school system." *Id.*, at 508.

The standards for granting a stay of mandate pending disposition of a petition for certiorari are well established:

> "[T]here must be a reasonable probability that four members of the Court would consider the underlying issue sufficiently meritorious for the grant of certiorari or the notation of probable jurisdiction; there must be a significant possibility of reversal of the lower court's decision; and there must be a likelihood that irreparable harm will result if that decision is not stayed." *Times-Picayune Publishing Corp.* v. *Schulingkamp*, 419 U. S. 1301, 1305 (1974) (POWELL, J., in chambers).

I cannot conclude that there is a "reasonable probability" four Members of the Court will vote to grant certiorari. The

issues presented by applicants are almost identical to those presented three years ago, when the Court voted to deny certiorari. Indeed, much of the school district's argument for granting a stay merely incorporates by reference JUSTICE REHNQUIST's opinion, joined by me, dissenting from the denial of certiorari at that time. Because this argument did not persuade the Court then, I cannot predict responsibly that it will persuade the Court now.

Speaking for myself, I believe that the case in its present posture merits review by this Court. The Court of Appeals, relying exclusively on statistics comparing 1969 and 1979, rejected with little explanation the District Court's finding of fact that the implementation of the consensual 1970 plan had created a unitary school system, and that the degree of segregation existing in 1980 was caused, not by any discriminatory action by the school authorities, but by demographic changes in the public school population and by private parental choice. The statistics relied on by the Court of Appeals do not address the legal effect of the implementation of the 1970 order or the legal cause of the degree of present imbalance. These latter questions should determine whether the District Court retains jurisdiction over the local schools.

It seems to me that the Court of Appeals may have erred as a matter of law in failing to give appropriate recognition to the District Court's factual findings as to the cause of the lack of present integration. *Pasadena* made clear that once a unitary school system has been attained, the District Court no longer has jurisdiction to continue its oversight, respond to inevitable demographic changes, and attempt by judicial decree to maintain for an indefinite time what it perceives to be a desirable racial mix in the schools. This is not to say, of course, that a federal court should not respond forcefully to proof of fresh or continued racial discrimination.

In sum, it seems to me that there is an impasse between the District Court and the Court of Appeals as to the mean-

ing of our decision in *Pasadena*. This is an important question of law. For this reason, I expect to vote to grant certiorari. Yet, I cannot say with confidence that the requisite number of other Justices will join me. Accordingly, the requests for a stay are denied.