**UNIROYAL, INC., Plaintiff–Appellant,**

v.

**RUDKIN–WILEY CORPORATION, Defendant/Cross–Appellant.**

**PREMIX, INC., Plaintiff–Appellant,**

v.

**RUDKIN–WILEY CORPORATION, Defendant/Cross–Appellant.**

**Nos. 90–1121, 90–1122.**

United States Court of Appeals, Federal Circuit.

July 10, 1991.

Rehearing Denied Sept. 9, 1991.

Suggestion for Rehearing In Banc Declined Oct. 22, 1991.

William R. Murphy, Tyler, Cooper & Alcorn, New Haven, Conn., argued for plaintiff-appellant. With him on the brief was Thomas A. Beck, Rosen, Dainow & Jacobs, New York City.

Francis T. Carr, Kenyon & Kenyon, New York City, argued for defendant/cross-appellant. With him on the brief were Albert J. Breneisen and Philip J. McCabe. Also on the brief was John D. Vandenberg, Portland, Or. of counsel.

Before ARCHER and LOURIE, Circuit Judges, and SKELTON, Senior Circuit Judge.

ARCHER, Circuit Judge.

Uniroyal, Inc. and Premix, Inc. (collectively Uniroyal) appeal the judgments by the United States District Court for the District of Connecticut, Civ. Nos. N–75–51 (EBB) and B–80–281 (EBB) (Aug. 23, 1989), holding Uniroyal and Premix liable for damages for infringement of claims 1 and 2 of United States Patent No. 3,241,876 (the '876 patent) licensed to Rudkin–Wiley Corporation (Rudkin–Wiley). Rudkin–Wiley also appeals the judgments on the grounds that the court erred in reducing its damage award by 20%, in failing to find the infringement of Uniroyal and Premix was willful and in failing to award prejudgment interest for the period during which this proceeding was stayed. We affirm-in-part, vacate-in-part and remand.

## BACKGROUND

This is the second appeal to this court involving the '876 patent, which discloses a drag-reducing air deflector (the Saunders deflector) useful for reducing wind resistance encountered by tractor-trailer combinations travelling at high speeds. In 1966, the year the '876 patent issued, Rudkin–Wiley obtained an exclusive license under the '876 patent and began manufacturing a commercial version of the claimed deflector shortly thereafter.

Only claims 1 and 2 of the '876 patent are at issue in this appeal. These claims

read as follows:[1]

Claim 1. In combination with a tractor-trailer vehicle having a gap between the tractor and the trailer, said tractor being of less height than said trailer:

(a) an airflow deflecting baffle mounted to extend above the cab roof of said tractor for diverting the air flow relatively widely in a manner to avoid entry of the airstream into said gap thereby creating at least one low pressure air eddy in said gap to reduce the frontal air pressure against the trailer, said diverted air reattaching to the trailer at points spaced rearwardly of said gap,

(b) said baffle being inclined vertically rearwardly and forwardly convexed in a horizontal plane,

(c) positioned a distance from the front of the trailer equal to approximately 0.7 the half width of the trailer,

(d) and of a height substantially 0.7 of the difference in height between the tractor cab roof and the roof of the trailer.

Claim 2. In combination with a tractor-trailer vehicle having a gap between the tractor and the trailer, an air flow deflecting shield comprising:

(a) a baffle mounted to extend above the tractor cab roof,

(b) said baffle being vertically inclined rearwardly and forwardly convexed in a horizontal plane,

(c) said baffle having a predetermined height substantially 0.7 of the difference in height between said cab roof and the trailer roof,

(d) said baffle being positioned a distance from the front of the trailer equal to approximately 0.7 the half width of the trailer.

Uniroyal began manufacturing the accused deflector (the Uniroyal deflector) in 1975. In the same year, Uniroyal filed a declaratory judgment action to have the '876 patent declared invalid or, if held valid, not infringed by Uniroyal. Premix purchased Uniroyal's deflector business in 1980 and immediately filed a similar action.

In both actions, Rudkin–Wiley counterclaimed for infringement of the patent. The cases were consolidated, and then the proceeding was stayed pending an appeal of a separate action involving the '876 patent. *See Saunders v. Air–Flo Co.*, 646 F.2d 1201, 210 USPQ 337 (7th Cir.1981).

Thereafter, following a bench trial, the district court held that (1) the '876 patent was invalid under 35 U.S.C. § 103, or (2) if the '876 patent was valid, the Uniroyal deflector did not infringe the claims of the patent either literally or under the doctrine of equivalents. *Uniroyal, Inc. v. Rudkin–Wiley Corp.*, Nos. N–75–51 (EBB), B–80–281 (EBB) (D.Conn. Mar. 31, 1986).

Rudkin–Wiley appealed to this court. We reversed the district court's holding that claims 1 and 2 of the '876 patent were invalid and vacated its finding that those claims were not infringed by the Uniroyal deflector. We remanded for further factual determinations on the issues of literal infringement and infringement under the doctrine of equivalents. *Uniroyal, Inc. v. Rudkin–Wiley Corp.*, 837 F.2d 1044, 5 USPQ2d 1434 (Fed.Cir.), *cert. denied*, 488 U.S. 825, 109 S.Ct. 75, 102 L.Ed.2d 51 (1988). Familiarity with the prior decision of this court is presumed.

In its amended ruling on remand, *Uniroyal, Inc. v. Rudkin–Wiley Corp.*, 13 USPQ2d 1192 and 721 F.Supp. 28 (D.Conn. June 26, 1989 and Aug. 21, 1989), the district court found that although claims 1 and 2 of the '876 patent were literally infringed by some Uniroyal deflectors, Rudkin–Wiley failed to establish the extent of such infringement. The court went on to hold, however, that to the extent that any of the Uniroyal deflectors do not literally infringe, they infringe claims 1 and 2 under the doctrine of equivalents.

The district court awarded Rudkin–Wiley damages for lost profits of $5,537,445, which reflected a reduction of 20% to account for the court's determination that Rudkin–Wiley would have had only an 80% market share. The court also awarded prejudgment interest calculated at the prime rate but, in doing so, excluded the period

---

**1.** Lettered paragraphs have been included for convenience of reference.

between May 27, 1977 and June 17, 1981 during which this litigation was stayed. Finally, the court found that the infringement of Uniroyal and Premix was not willful and rejected Rudkin–Wiley's requests for treble damages and for attorneys' fees under 35 U.S.C. §§ 284 and 285.

## DISCUSSION

Uniroyal asserts that the district court erred in its findings on literal infringement,[2] infringement under the doctrine of equivalents, and the amount of damages. These determinations are findings of fact which may be overturned only if clearly erroneous. *Heisig v. United States*, 719 F.2d 1153, 1158 (Fed.Cir.1983); *Schenck, A.G. v. Nortron Corp.*, 713 F.2d 782, 785, 218 USPQ 698, 700 (Fed.Cir.1983). Rudkin–Wiley claims the district court erred in concluding that Uniroyal's infringement was not willful. It further asserts that the district court erred as a matter of law in limiting Rudkin–Wiley's lost profits award to 80% of the infringing sales and abused its discretion in failing to award prejudgment interest for the period the trial proceedings were stayed.

A. Infringement under the Doctrine of Equivalents

In determining that all of the deflectors produced by Uniroyal infringed claims 1 and 2, the district court applied *Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*, 339 U.S. 605, 608–09, 70 S.Ct. 854, 856–57, 94 L.Ed. 1097, 85 USPQ 328, 330 (1950), and found that the Uniroyal deflectors performed substantially the same function in substantially the same way to obtain the same result as the claimed invention. Because it is undisputed that the district court correctly determined that the Uniroyal deflectors and the patented invention perform substantially the same function and obtain the same results, the only issue is whether they operated in substantially the same

manner. *See Uniroyal*, 837 F.2d at 1057, 5 USPQ2d at 1443. Uniroyal offers several arguments why the district court erred. We find none of these arguments persuasive.

The district court stated that it had found in its original opinion that the Uniroyal deflector differed in two substantial ways from the invention in the '876 patent. The court had emphasized (1) that the Uniroyal deflector operated more like a fairing because it was more streamlined, and (2) that the Uniroyal deflector had an adjustability feature. The court recognized that these operational differences had been rejected by this court on appeal:

> Both of these findings were vacated on appeal. The appellate court found that, despite the fact that the Uniroyal device was streamlined and acted like a fairing, it nevertheless "divert[ed] the airflow relatively widely in the manner that the properly construed claim requires." 837 F.2d at 1056. With regard to the adjustability feature, the Federal Circuit ruled: "Adding features to an accused device will not result in noninfringement if all the limitations in the claims, or equivalents thereof, are present in the accused device." 837 F.2d at 1057.

13 USPQ2d at 1197.

Because no other distinctions in operation had been shown, the district court concluded that the Uniroyal deflector operates in substantially the same manner as the claimed invention of the '876 patent.

> Although Uniroyal deflectors that have a position and height outside of the optimum ranges are admittedly less effective, nevertheless the specification affirms that such deflectors operate to deflect air and reduce air resistance in the same manner as the properly construed claims. (Col. 5, lines 34–40 and accompanying figures).

---

2. Uniroyal appeals the district court's finding of literal infringement. Although it is true that the court stated that some of the Uniroyal deflectors literally infringe, it also determined that Rudkin–Wiley did not prove the extent of such infringement, *i.e.*, the number of installed deflec-

tors that would fall within the literal language of the claims. Because of this failure of proof, it is unnecessary for this court to consider literal infringement and Uniroyal's arguments on that issue.

*Id.* In citing to the specification of the '876 patent, the court recognized that the patent taught that a deflector of different height or in a different position would operate in the same manner, albeit at less than optimum efficiency.[3]

 Uniroyal complains that the district court did not expressly construe the words "substantially 0.7" and "approximately 0.7" in the claims in reaching its decision on infringement under the doctrine of equivalents. But, as noted, the patent specification teaches that a device otherwise satisfying the claim limitations works in the same manner, but not as efficiently, if it is of a different height or positioned differently. Secondly, Uniroyal contends that this court's claim construction related only to literal infringement and to one limitation in the claim, whereas the doctrine of equivalents requires analysis of the operation of the invention as a whole. Claim construction for purposes of literal infringement, however, is equally applicable in determining infringement under the doctrine. *Senmed, Inc. v. Richard–Allen Medical Indus., Inc.*, 888 F.2d 815, 818, 12 USPQ2d 1508, 1511 (Fed.Cir.1989). Moreover, the district court's opinion does not indicate that it failed to consider the operation of the invention and the accused deflector as a whole.

 Finally, Uniroyal contends that the district court erred in not specifically considering prosecution history estoppel in the context of infringement of claims 1 and 2. The court, however, was aware that the doctrine of equivalents is subservient to the doctrine of prosecution history estoppel. *Autogiro Co. of Am. v. United States*, 384 F.2d 391, 400–01, 181 Ct.Cl. 55, 155 USPQ 697, 705 (1967). Its remand opinion dealt extensively with prosecution history estoppel in declining to find claims 3 and 4 infringed under the doctrine of equivalents. Even if the district court did fail to consider prosecution history in connection with claims 1 and 2, we are not

convinced that Uniroyal's arguments require remand. Uniroyal contends that the claims were rejected over the Stamm reference. In its previous opinion, this court noted that the Stamm "air flow control attachments ... are not structurally similar to the claimed invention, nor is there any suggestion of the claimed shape or structure in the Stamm patent." 837 F.2d at 1051, 5 USPQ2d at 1439. Moreover, Uniroyal does not, and obviously cannot, contend it practices the Stamm device. We see nothing in Uniroyal's argument, therefore, that would indicate that the Stamm reference would curtail the scope of equivalents in such a manner as to preclude a finding that Uniroyal's deflector infringes the '876 patent under the doctrine of equivalents.

### B. Damages

Uniroyal contends that, in applying the factors for determining lost profits damages for patent infringement as set forth in *Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.*, 575 F.2d 1152, 197 USPQ 726 (6th Cir.1978), the district court erred as a matter of law in placing the burden on Uniroyal to prove the presence of non-infringing substitutes on the market. This argument has no merit.

 The court specifically recognized that "[i]n order to recover lost profits, *a patentee or licensee must show* a reasonable probability that, but for the infringement, it would have made the infringer's sales." (Emphasis added). 13 USPQ2d at 1198. The district court additionally noted that the absence of acceptable non-infringing substitutes was relevant to the showing of the computation of lost profits damages which "the patentee must present." *Id.* at 1199. These statements show that the burden of proof was properly placed on Rudkin–Wiley to show the absence of acceptable non-infringing substitutes.

---

**3.** The portion of the patent relied on by the district court states: "As shown in Fig. 8, effective, though not optimum results may be obtained when the height ratio of the shield or h/H is between 0.5 and 0.9. Similarly, as shown in Fig. 9, a wide variance in the ratio of the distance of the shield or baffle from the front of the trailer, or w/W [i.e. x/W] is effective, though in progressively decreasing increments, over a range between 0.3 and about 2.0."

Uniroyal has quoted out of context the district court's observation that Uniroyal "did not establish that the Dragfoiler, or any other non-infringing product, possessed the beneficial attributes of the patented device, or could offer the defendant any significant competition." This comment merely indicated that Uniroyal had not presented evidence sufficient to rebut the evidence already presented by Rudkin–Wiley to show that there were no acceptable non-infringing substitutes on the market. Although the district court noted that "[s]ome evidence submitted at trial suggested the existence of other manufacturers in the market," the court correctly stated that the "[m]ere existence of a competing device, however, does not make the device an acceptable substitute." *See TWM Mfg. Co. v. Dura Corp.*, 789 F.2d 895, 901, 229 USPQ 525, 529 (Fed.Cir.), *cert. denied*, 479 U.S. 852, 107 S.Ct. 183, 93 L.Ed.2d 117 (1986).

## C. Prejudgment Interest Rate

The district court, incident to its damage award, granted prejudgment interest to Rudkin–Wiley at the prime rate compounded daily. Uniroyal argues that the court's use of the prime rate should be vacated because it was selected on the basis of a clearly erroneous finding of fact.

The court selected the prime rate because (1) the litigation was, by patent case standards, of a protracted and comprehensive nature, and (2) Rudkin–Wiley's poor financial condition during the pendency of the litigation required it to finance its operations with monies borrowed at rates above the prime rate. 13 USPQ2d at 1201. The first finding is not contested. As to the second finding, Uniroyal admits in its brief on appeal that at least one loan made to Rudkin–Wiley during the pendency of the litigation carried an interest rate in excess of the prime rate. Accordingly, it cannot be said that the second finding was clearly erroneous.

In any event, it is not necessary that a patentee demonstrate that it borrowed at the prime rate in order to be entitled to prejudgment interest at that rate. *Stu-diengesellschaft Kohle, m.b.H. v. Dart Indus., Inc.*, 862 F.2d 1564, 1579–80, 9 USPQ2d 1273, 1287 (Fed.Cir.1988). A trial court is afforded wide latitude in the selection of interest rates, *Gyromat Corp. v. Champion Spark Plug Co.*, 735 F.2d 549, 556–57, 222 USPQ 4, 9–10 (Fed.Cir.1984), and may award interest at or above the prime rate. *Lam, Inc. v. Johns–Manville Corp.*, 718 F.2d 1056, 1066, 219 USPQ 670, 676 (Fed.Cir.1983); *Studiengesellschaft Kohle*, 862 F.2d at 1579–80, 9 USPQ2d at 1287. The court's selection of the prime rate was not an abuse of discretion.

## D. Amount of Damages

After finding that no acceptable non-infringing substitutes existed on the market, 13 USPQ2d at 1199, the district court made a conclusory finding without apparent support that "absent Uniroyal's infringing sales, defendant would have possessed an 80% market share." *Id.* at 1200. As a result it awarded Rudkin–Wiley the profit lost on only 80% of Uniroyal's infringing sales. The court stated that "[b]ecause [Rudkin–Wiley] would have possessed only eighty percent of the market, it is more appropriate to assume that defendant would have made 80 percent of plaintiff's sales." *Id.* We agree with Rudkin–Wiley that the court erred.

The district court's reduction of lost profits based on market share is inconsistent with its finding that no acceptable non-infringing substitutes for the patented deflector existed. Although there may have been other competitors in the marketplace, in order to justify a reduced damage award for lost profits the controlling issue is whether the competitors sell an acceptable non-infringing substitute. In *TWM Mfg.*, 789 F.2d at 901, 229 USPQ at 529, this court held that even though 30 percent of the relevant market was held by competitors, it did not necessarily follow that acceptable non-infringing substitutes existed in the market:

> Mere existence of a competing device does not make that device an acceptable substitute.... "A product lacking the advantages of that patented can hardly

be termed a substitute 'acceptable' to the customer who wants those advantages." *Accord Radio Steel & Mfg. Co. v. MTD Prods., Inc.*, 788 F.2d 1554, 1556, 229 USPQ 431, 432–33 (Fed.Cir.1986).

■ A purchaser unable to obtain the Uniroyal deflector is presumed to seek an *acceptable* substitute, an item that the district court found was manufactured *only* by Rudkin–Wiley. Uniroyal has not proven that the court's finding regarding the absence of such substitutes was clearly erroneous. Thus, Rudkin–Wiley should have been accorded a profit on all of Uniroyal's infringing sales.

Prior to applying the 20% reduction, the district court determined that $6,671,806 would compensate Rudkin–Wiley for profits lost on all of Uniroyal's infringing sales. Therefore, the judgment must be modified to increase the quantum of damages awarded to Rudkin–Wiley to $6,671,806.

E. Prejudgment Interest During Stay

■ Rudkin–Wiley contends that the district court erred as a matter of law in denying prejudgment interest for the period of time between May 27, 1977 and June 17, 1981 when the proceedings were stayed. We do not agree that error was committed. The proceedings were stayed upon the agreement of both parties, but Rudkin–Wiley originally requested the stay. The court's decision is fully in keeping with *General Motors Corp. v. Devex Corp.*, 461 U.S. 648, 657, 103 S.Ct. 2058, 2063, 76 L.Ed.2d 211, 217 USPQ 1185, 1189 (1983), in which the Supreme Court held that "[t]here may be other circumstances in which it may be appropriate not to award prejudgment interest" besides the circumstance where the patent owner was responsible for undue delay in prosecuting the lawsuit.

F. Willful Infringement

■ Finally, Rudkin–Wiley contends that the district court erred in failing to find that the infringement of Uniroyal and its successor, Premix, was willful. Whether or not infringement is willful is a question of fact. *Bott v. Four Star Corp.*, 807

F.2d 1567, 1572, 1 USPQ2d 1210, 1213 (Fed. Cir.1986).

As evidence of willfulness, Rudkin–Wiley asserts that Uniroyal deliberately copied the Saunders deflector. This is not a new argument for Rudkin–Wiley. When the copying argument was originally presented to the district court, it was considered meritless because of the convincing testimony to the contrary of the inventor of the Uniroyal deflector, Robert Dorsch. Copying was argued to this court in the earlier appeal, but we did not disturb the district court's findings. The argument was again rejected by the district court on remand. We will not consider the argument further.

Rudkin–Wiley's attack on the legal opinion obtained by Uniroyal, on which the district court primarily relied in concluding lack of willfulness, is similarly without merit. The court found that it was a competent opinion of counsel obtained before the commencement of substantial commercial activities and that it was relied on by Uniroyal. *See Kloster Speedsteel AB v. Crucible, Inc.*, 793 F.2d 1565, 1579–80, 230 USPQ2d 81, 90–91 (Fed.Cir.1986), *cert. denied*, 479 U.S. 1034, 107 S.Ct. 882, 93 L.Ed.2d 836 (1987); *Underwater Devices, Inc. v. Morrison–Knudsen Co.*, 717 F.2d 1380, 1390, 219 USPQ 569, 576 (Fed.Cir. 1983). The court specifically rejected Rudkin–Wiley's "accusations that the legal advice was 'a *pro forma* opinion procured by Uniroyal for use in its expected suit against Rudkin–Wiley,' [a]s not supported by the evidence."

As to Premix, Rudkin–Wiley argues that it should have obtained the opinion of independent legal counsel, particularly after the decision of the Seventh Circuit reversing a district court's decision holding the '876 patent invalid. It is undisputed, however, that Premix did obtain the legal opinion of the patent counsel for Uniroyal who was handling Uniroyal's invalidity suit against Rudkin–Wiley on the '876 patent. This letter unequivocally stated that the '876 patent is "invalid and unenforceable against a manufacturer, vendor or user of the Uniroyal Air Deflector." Counsel expressly stated in the letter that it had

reviewed the patent, its file history, and the pertinent prior art, "some of which is cited in the Indiana suit," as well as certain tests, experiments, and studies performed in connection with this proceeding. We note also that in this proceeding the district court declined to accord the decision of the Indiana district court collateral estoppel effect because of certain prior art that was not adequately considered, and that Rudkin–Wiley did not contest the propriety of that decision. *Uniroyal*, 837 F.2d at 1047 n. 1, 5 USPQ2d at 1436 n. 1.

Based on the foregoing, we conclude that the district court's finding of lack of willfulness, and its resulting conclusion that increased damages and attorneys' fees "are not warranted on the facts of this case," has not been shown to be clearly erroneous.

### G. Conclusion

Accordingly, the district court's findings of infringement under the doctrine of equivalents and lack of willfulness are affirmed. With respect to the district court's interest award, we hold that it did not err in awarding prejudgment interest at the prime rate compounded daily and in denying prejudgment interest for the period between May 27, 1977 and June 17, 1981. We vacate the judgment as to the quantum of damages for lost profits and remand for the entry of a judgment for damages that reflects Rudkin–Wiley's lost profits on all of Uniroyal's infringing sales. We have considered the parties' other arguments and conclude that they are without merit.

### COSTS

Each party shall bear its own costs.

AFFIRMED–IN–PART, VACATED–IN–PART, AND REMANDED.