145 F.3d 1317
 46 U.S.P.Q.2d 1843
 YBM MAGNEX, INC. (Successor in interest to Crucible
Materials Corporation), Appellant,
v.
INTERNATIONAL TRADE COMMISSION, Appellee,
San Huan New Materials High Tech, Inc., Ningbo Konit
Industries, Inc., and Tridus International, Inc.,
Intervenors.
 No. 97-1409.
 United States Court of Appeals,
Federal Circuit.
 May 27, 1998.
Rehearing Denied; Suggestion for Rehearing In Banc
Declined Aug. 21, 1998.
 
 Darrel C. Karl, Finnegan, Henderson, Farabow, Garrett & Dunner, LLP, of Washington, DC, argued for appellant. With him on brief were Ford F. Farabow, Jr., Wayne W. Herrington, and Michael J. Flibbert.
 Jay H. Reiziss, Attorney, Office of General Counsel, U.S. Intern. Trade Commission, of Washington, DC, argued for appellee. With him on brief were Lyn M. Schlitt, General Counsel, and James A. Toupin, Deputy General Counsel.
 Gary M. Hnath, Venable, Baetjer, Howard & Civiletti, LLP, of Washington, DC, argued for intervenors.
 Before RICH, Circuit Judge, SMITH, Senior Circuit Judge, and NEWMAN, Circuit Judge.
 PAULINE NEWMAN, Circuit Judge.
 
 
 1
 This appeal arises from a proceeding to enforce a Consent Order issued in Investigation No. 337-TA-372, conducted under 19 U.S.C. § 1337, Section 337 of the Tariff Act of 1930 as amended, relating to Certain Neodymium-Iron-Boron Magnets, Magnet Alloys, and Articles Containing Same. YBM Magnex, successor in interest to Crucible Materials Corporation (hereinafter YBM), appeals the decision of the United States International Trade Commission,[1] reinterpreting and effectively modifying the Consent Order entered into with the three respondents that appear in this appeal as Intervenors (San Huan New Materials High Tech, Inc., Ningbo Konit Industries, Inc., and Tridus International, Inc.). We reverse the Commission's decision, for it was based on an incorrect interpretation and application of precedent.
 
 BACKGROUND
 
 2
 YBM is the owner of United States Patent No. 4,588,439 entitled "Oxygen Containing Permanent Magnet Alloy" (the '439 patent), directed to permanent magnet alloy compositions consisting of at least one rare earth element, iron, and boron, and containing specified amounts of oxygen. Such magnets without the increased oxygen content are described as exhibiting poor stability under conditions of high humidity and warm temperature, for they absorb and react with hydrogen present in the atmosphere, and physically degrade. According to the '439 patent, adjusting the oxygen content of the magnet alloy results in improved stability in warm, humid conditions. The relevant claims of the '439 patent are:
 
 
 3
 1. A permanent magnet alloy consisting essentially of, in weight percent, 30 to 36 of at least one rare earth element, 60 to 66 iron, 6,000 to 35,000 ppm oxygen and balance boron.
 
 
 4
 2. The alloy of claim 1 wherein at least one of said rare earth elements is neodymium.
 
 
 5
 3. The alloy of claim 1 wherein at least one of said rare earth elements is dysprosium.
 
 
 6
 YBM charged that the importation by eight respondents of certain neodymium-iron-boron-oxygen permanent magnets infringed the '439 patent, literally and under the doctrine of equivalents.
 
 
 7
 After various proceedings, the three respondent/intervenors entered into a Consent Order and the investigation was terminated as to them. They agreed not to infringe the '439 patent, the Consent Order including the following provisions:
 
 
 8
 (1) The Respondents shall not sell for importation, import into the United States or sell in the United States after importation ... neodymium-iron-boron magnets which infringe any of claims 1-3 of the '439 Patent, or articles or products which contain such magnets, except under consent or license from Crucible;
 
 
 9
 . . . . .
 
 
 10
 (7) Respondents ... shall be excluded from any further remedial action taken by the Commission in this investigation. Nothing in this Consent Order, however, shall be construed as precluding further remedial action by the Commission in its investigation, including the grant of a general exclusion order covering all magnets or products containing magnets which are not subject to this Order.
 
 
 11
 . . . . .
 
 
 12
 (9) This investigation is hereby terminated with respect to San Huan, Ningbo and Tridus, and San Huan, Ningbo, and Tridus are hereby dismissed as named Respondents in this investigation; provided, however, that enforcement, modification, or revocation of the Consent Order shall be carried out pursuant to Subpart I of the Commission's Rules of Practice and Procedure, 19 C.F.R. Part 210.
 
 
 13
 Certain Neodymium-Iron-Boron Magnets, Magnet Alloys, and Articles Containing Same, Inv. No. 337-TA-372 (Int'l Trade Comm'n Oct. 11, 1995) (Consent Order).
 
 
 14
 The investigation continued as to the remaining respondents. The administrative law judge issued Final Initial and Recommended Determinations of violation of Section 337, Certain Neodymium-Iron-Boron Magnets, Magnet Alloys, and Articles Containing Same, USITC Pub. 2964, Inv. No. 337-TA-372 (May 1996) (Final Initial and Recommended Determinations, Dec. 11, 1995), in which the ALJ found that the '439 patent was infringed by various articles, either literally or under the doctrine of equivalents. In finding literal infringement the ALJ took into account that the instrument that was used to measure oxygen content of the magnet alloy had a precision of ±150 ppm. The ALJ also found that magnet alloys having an oxygen content between 5,450 ppm and 6,000 ppm infringed under the doctrine of equivalents.
 
 
 15
 The ALJ's Determinations duly became the holding of the Commission according to 19 C.F.R. § 210.42(h)(2); see Notice Not to Review Initial Determination, 61 Fed.Reg. 6863 (Feb. 22, 1996). The Commission issued a general exclusion order that included the following provisions:
 
 
 16
 1. Neodymium-iron-boron magnets and magnet alloys covered by claims 1, 2, or 3 of U.S. Letters Patent 4,588,439, are excluded from entry for consumption into the United States for the remaining term of the patent, except under license of the patent owner or as provided by law.
 
 
 17
 2. Notwithstanding paragraph 1 of this Order, nothing in this Order shall apply to [San Huan, Ningbo, or Tridus] pursuant to paragraph 7 of the Consent Order issued by the Commission on October 11 and 12, 1995.
 
 
 18
 Certain Neodymium-Iron-Boron Magnets, Magnet Alloys, and Articles Containing Same, USITC Pub. 2964, Inv. No. 337-TA-372 (May 1996) (Order, Mar. 29, 1996).
 
 
 19
 On March 4, 1996 YBM filed an enforcement complaint against the three respondents who had entered into the Consent Order, charging that they had violated its terms by continuing to import and sell infringing magnets. While the enforcement proceeding was pending, the Federal Circuit on June 11, 1996 decided Maxwell v. J. Baker, Inc., 86 F.3d 1098, 39 USPQ2d 1001 (Fed.Cir.1996), cert. denied, --- U.S. ----, 117 S.Ct. 1244, 137 L.Ed.2d 327 (1997). In its opinion the court stated that "subject matter disclosed but not claimed in a patent application is dedicated to the public." 86 F.3d at 1106, 39 USPQ2d at 1006. The three respondents then argued that Maxwell had changed the law and now barred application of the doctrine of equivalents to those magnets whose oxygen content was in the range between 5,450 and 6,000 ppm, because this range was disclosed but not claimed in the '439 patent. The respondents argued that this subject matter must now be deemed dedicated to the public, and beyond the reach of the patentee on any theory of equivalency.
 
 
 20
 After a four day trial on the issues of the asserted violation of the Consent Order, including argument of the interpretation and application of Maxwell, the ALJ held that the three respondents had violated the Consent Order in bad faith by continuing infringement after entering into the Consent Order. The ALJ held that Maxwell did not foreclose, as a matter of law, application of the doctrine of equivalents to encompass oxygen contents of 5,450 to 6,000 ppm. The ALJ explained, citing Graver Tank and Federal Circuit precedent, that earlier decisions of precedential force[2] held that subject matter that was disclosed in the specification but not claimed may be the basis of a finding of equivalency, and that Maxwell was directed to its facts and did not overturn all precedent on application of the doctrine of equivalents. The ALJ found, in accordance with the prior determination, that magnets having oxygen contents in the range of 5,450-6,000 ppm infringed the '439 patent under the doctrine of equivalents. Certain Neodymium-Iron-Boron Magnets, Magnet Alloys, and Articles Containing Same, Inv. No. 337-TA-372 (Int'l Trade Comm'n Jan. 17, 1997) (Recommended Determination).
 
 
 21
 The Commission rejected the ALJ's Recommended Determination with respect to the interpretation of Maxwell. The Commission held that Maxwell established a new rule of law, and that the doctrine of equivalents can no longer be applied to reach subject matter that is disclosed in the patent but not claimed. Describing Maxwell as a "significant change[ ] in relevant decisional law," the Commission held that magnet alloys with oxygen content below 6,000 ppm can not infringe the '439 patent by application of equivalency. The Commission held that the outstanding Consent and exclusion orders do not prevent the importation and sale of such magnets. YBM appeals the Commission's decision[3] with respect to the interpretation of Maxwell to bar application of the doctrine of equivalents to these articles. The three Intervenors have separately appealed other issues arising from these proceedings, in an appeal not now before us.
 
 DISCUSSION
 
 22
 Rulings of law by the Commission receive plenary review on appeal. Modine Mfg. Co. v. International Trade Com'n, 75 F.3d 1545, 1549, 37 USPQ2d 1609, 1611 (Fed.Cir.1996). The meaning or interpretation of precedent is a question of law, South Park Independent School Dist. v. United States, 453 U.S. 1301, 1304-05, 102 S.Ct. 1, 69 L.Ed.2d 1007 (1981), and the Commission's determination thereof is given de novo review by the Federal Circuit.
 
 
 23
 YBM argues that the Commission's interpretation of Maxwell places Maxwell into direct conflict with Supreme Court and Federal Circuit precedent. YBM argues that the facts of Maxwell are narrow, and that the apparently broad statement made by the Federal Circuit in its opinion is properly viewed in connection with the facts of that case, and is not properly applied to all other cases, broadly and without discrimination. Indeed, the facts in Maxwell are not the routine facts of an equivalency determination. Maxwell disclosed two distinct alternative ways in which pairs of shoes are attached for sale, and claimed only one of them. Both embodiments were fully described in the patent. The court in its opinion observed that by this action Maxwell avoided examination of the unclaimed alternative, which was distinct from the claimed alternative. In view of the distinctness of the two embodiments, both of which were fully described in the specification, the Federal Circuit denied Maxwell the opportunity to enforce the unclaimed embodiment as an equivalent of the one that was claimed.
 
 
 24
 The Commission stresses, as new law, the court's general statement in Maxwell that the doctrine of equivalents is not applicable to subject matter that is disclosed but not claimed. However, the Commission errs in deeming it now to be irrelevant whether there is probative evidence of insubstantial differences, or substantial identity of function, way, and result. The statement made in Maxwell must be received, as it was given, in light of precedent and its context. The Commission's interpretation of Maxwell would place Maxwell into conflict with Supreme Court and Federal Circuit precedent.
 
 
 25
 The Supreme Court's guidance in Warner-Jenkinson Co. v. Hilton Davis Chemical Co., 520 U.S. 17, 117 S.Ct. 1040, 137 L.Ed.2d 146, 41 USPQ2d 1865 (1997) and Graver Tank & Mfg. Co. v. Linde Air Products Co., 339 U.S. 605, 70 S.Ct. 854, 94 L.Ed. 1097, 85 USPQ 328 (1950) does not permit the blanket rule that everything disclosed but not claimed is barred from access to the doctrine of equivalents, whatever the facts, circumstances, and evidence. Maxwell accords with the Court's precedent only when its decision is understood and applied in light of its particular facts. In Graver Tank, for example, the asserted equivalent, manganese silicate, had itself been disclosed in the specification; the district court had relied on this disclosure as supporting equivalency, not negating it:
 
 
 26
 Accordingly, it is concluded that the patent itself fully discloses that welding compositions composed chiefly of manganese silicate and prepared according to the teachings of the patent are equivalent to those in which the alkaline earth metals are the principal constituents.
 
 
 27
 Linde Air Products Co. v. Graver Tank & Mfg. Co., 86 F.Supp. 191, 199-200, 75 USPQ 231, 238 (N.D.Ind.1947). The Supreme Court sustained this conclusion against the Court's dissenters, who urged that "what is not specifically claimed is dedicated to the public," Graver Tank, 339 U.S. at 614, 70 S.Ct. 854, 94 L.Ed. 1097, 85 USPQ at 332 (Black, J., dissenting); 339 U.S. at 618, 70 S.Ct. 854, 94 L.Ed. 1097, 85 USPQ at 334 (Douglas J., dissenting) ("It was disclosed in the application and then excluded from the claims. It therefore became public property.") This specific issue was presented and resolved in Graver Tank, the explicit dissents illuminating that this point of law had been considered and rejected by the Court.
 
 
 28
 In Warner-Jenkinson the Court again acted in preservation of the doctrine of equivalents. Responding to the issue in that case, the Court "reject[ed] the more severe proposition that equivalents must not only be known, but must be actually disclosed in the patent in order for such equivalents to infringe upon the patent." 520 U.S. 17, 117 S.Ct. at 1053, 137 L.Ed.2d 146, 41 USPQ2d at 1874. In recognizing that equivalents are not limited to what is disclosed in the patent, the Court necessarily recognized that equivalents may indeed be disclosed in the patent.
 
 
 29
 Because the Court rejected the proposition that subject matter that is disclosed but not claimed is always deemed dedicated to the public, that position is not available as a general rule of law. Some factual situations may indeed warrant rejection of an asserted equivalent on this ground, as the Federal Circuit held in Maxwell; but to enlarge Maxwell to a broad and new rule of law, as did the Commission, is not only an incorrect reading of Maxwell but would bring it into direct conflict with Supreme Court precedent.
 
 
 30
 The Commission's reading of Maxwell also conflicts with Federal Circuit precedent. Our precedent contains many examples of subject matter that was included in the body of the specification but not in the claims, and that was considered for equivalency on the particular facts, with varying results as the evidence warranted. For example, in some cases the patentee had sought broader claims based on a broader disclosure but had not obtained them, raising issues of prosecution history estoppel; e.g., Modine Mfg. Co. v. International Trade Com'n, 75 F.3d 1545, 37 USPQ2d 1609 (Fed.Cir.1996); Cole v. Kimberly-Clark Corp., 102 F.3d 524, 41 USPQ2d 1001 (Fed.Cir.1996). In other cases the patentee had sought and obtained claims that were narrower than the description in the specification, and obtained relief under the doctrine of equivalents; e.g., Pall Corp. v. Micron Separations, Inc., 66 F.3d 1211, 36 USPQ2d 1225 (Fed.Cir.1995); Uniroyal, Inc. v. Rudkin-Wiley Corp., 939 F.2d 1540, 19 USPQ2d 1432 (Fed.Cir.1991). In still other cases the specification taught that the accused arrangement was interchangeable with the claimed arrangement, e.g., Miles Laboratories, Inc. v. Shandon Inc., 997 F.2d 870, 27 USPQ2d 1123 (Fed.Cir.1993); the availability of relief under the doctrine of equivalents was not denied as applying to subject matter disclosed but not claimed.
 
 
 31
 Maxwell is not the only case that has held, on particular facts, that unclaimed subject matter is deemed abandoned. In Unique Concepts, Inc. v. Brown, 939 F.2d 1558, 19 USPQ2d 1500 (Fed.Cir.1991) the patentee disclosed but did not claim an alternative embodiment having mitered corners, while the claims were specific to linear and right angle corners; the court held that the disclosure of this alternative embodiment, without claiming it, signaled an intention to disclaim or abandon it. The court in Maxwell also cited Miller v. Bridgeport Brass Co., 104 U.S. (14 Otto) 350, 26 L.Ed. 783 (1881). In Miller the patent described and claimed a lamp that included two domes without a chimney. Some fifteen years later Miller reissued the patent to cover a single-domed lamp with a chimney. The Supreme Court held the reissued patent invalid because the single-domed lamp with a chimney was not described in the original patent. There was no question of equivalency in Miller; it was a question of reissue validity, when the original patent did not describe the subject matter for which reissue was sought.
 
 
 32
 In a great variety of situations the courts have applied the criteria of equivalency to the particular facts, sometimes finding equivalency and sometimes not. The doctrine of equivalents seeks to establish a just balance between the purpose of claims to define and give notice of what is patented, and the judicial responsibility to avoid a "fraud on the patent" based on insubstantial changes from the patented invention. The fundamentals of the law of equivalency implement these premises, and were not changed by Maxwell as applied to all situations. Maxwell did not displace the wealth of precedent that permits determination of equivalency, vel non, as to subject matter included in the written description but not claimed. See Kastigar v. United States, 406 U.S. 441, 454-55, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972) ("The broad language in [prior decision] relied upon by petitioners was unnecessary to the Court's decision, and cannot be considered binding authority."); Smith v. Orr, 855 F.2d 1544, 1550 (Fed.Cir.1988) ("Broad language in an opinion, which language is unnecessary to the court's decision, cannot be considered binding authority").
 
 
 33
 Thus the Commission's interpretation of Maxwell as creating a new rule of law that applies in all cases and to all facts is incorrect. The Commission had initially adopted the ALJ's factual findings of equivalency, and rejected those findings based only on an incorrect view of Maxwell. The Commission's decision in the enforcement proceeding is reversed, and the Consent Order and other orders affected by that decision are restored to their prior scope and effect.
 
 
 34
 Costs to YBM.
 
 
 35
 REVERSED.
 
 
 
 [1]
 Certain Neodymium-Iron-Boron Magnets, Magnet Alloys, and Articles Containing Same, USITC Pub. 3073, Inv. No. 337-TA-372 (Nov.1997) (Commission Determination on Violation of Consent Order, Apr. 8, 1997; Commission Opinion on Violation of Consent Order, Apr. 15, 1997; Commission Opinion, Oct. 3, 1997 (denying reconsideration))
 
 
 [2]
 Even were there an apparent conflict in statements of Federal Circuit law, the earlier statement prevails unless or until it has been overruled in banc. Newell Cos. v. Kenney Mfg. Co., 864 F.2d 757, 765, 9 USPQ2d 1417, 1423 (Fed.Cir.1988). Subsequent panel opinions may elaborate and refine and thus advance the evolution of judge-made law, but they can not change the law as established in prior rulings
 
 
 [3]
 Jurisdiction of this appeal was established in Crucible Materials Corp. v. International Trade Com'n, 127 F.3d 1057 (Fed.Cir.1997)